EMILY BELL MALOY WEBB, Appellant, *vs.* WALTER J. GILBERT *et al.* Appellees.

*Opinion filed June 15, 1934—Rehearing denied October 4, 1934.*

D. F. MOORE, for appellant.

CURTIS WILLIAM, J. HARMAN GILBERT, and G. GALE GILBERT, for appellees.

Mr. JUSTICE HERRICK delivered the opinion of the court:

The appellant (hereinafter called the complainant) prosecutes this appeal from a decree of the circuit court of Jefferson county dismissing for want of equity her bill filed against the appellees (hereinafter called the defendants). The subject matter of the litigation is the tract of real estate, with improvements thereon, known as the Palace Hotel, situated in Mt. Vernon. The litigation involves two contracts. On the first day of September, 1920, the defendant Walter J. Gilbert and the defendant William E. Hill executed and delivered a contract in writing by which Gilbert agreed to convey such real estate to Hill for the sum of $13,000, which Hill agreed to pay. One thousand dollars in cash was paid on execution of the contract and the balance was payable in semi-annual installments of $1000 each. Conveyance of the property was not to be made until the purchase price was fully paid. Hill took possession of the property and operated the hotel thereon until February 15, 1922. On that day he entered into a written contract by which he agreed to sell and convey the property to the complainant for the sum of $15,500. Four thousand dollars was paid by the conveyance of a residence property owned by the complainant in Princeton, Indiana. The remainder of the purchase price was to be paid at the rate of $100 per month, beginning with the first day of June, 1922, deferred payments to bear interest at seven per cent per annum, payable semi-annually. Conveyance of the property was not to be made to her until the purchase price was fully paid. On the same day that the last named contract was made the complainant took possession of the premises and has continued in the possession thereof until the filing of the present bill. Each contract provided that if the purchaser failed to pay the installments

as the same matured, the vendor, at his option, could terminate the contract, retain all payments made to him and take possession of the property. On April 10, 1923, Gilbert assigned and delivered the contract made between him and Hill to the defendant Walter Philp. On September 19, 1923, Gilbert made and delivered his warranty deed purporting to convey the premises to Philp. The contract between Gilbert and Hill was filed for record in the recorder's office of Jefferson county a short time after the contract was made, and the deed from Gilbert to Philp was recorded in the recorder's office on the same day the deed was made.

The evidence shows that on the day Gilbert made his deed to Philp, Hill, Philp and Gilbert went together to the hotel and there had a conversation with the complainant. Philp, Hill and Gilbert all testified that Gilbert was present, and the three testified to substantially the same things as to what was said in a conversation then had with the complainant. The complainant disputes their testimony as to what was said in the conversation and denies Gilbert was present, but the evidence tends to prove that on this occasion Hill endeavored to induce the complainant to make a contract for the sale of the premises direct with Philp, the Gilbert-Hill contract to be surrendered to Hill and the Hill-Webb contract to be surrendered to the complainant. Philp wanted the payments made in installments of $1000, as provided in the Gilbert-Hill contract. The complainant objected to making a new contract, saying she would rather pay as she was paying, and that she had started her contract with Hill and preferred to continue with him. The evidence shows, also, that at the time the Hill-Webb contract was made the complainant had notice that Hill did not have the legal title to the property but had only a contract for the purchase thereof.

The complainant made her payments due under her contract with Hill promptly and punctually. On December 11,

1928, there was a balance due Hill under the Hill-Webb contract of $600. On that day the complainant tendered this sum to Hill and demanded a deed for the property. Hill was unable to convey the property. He at that time was in default in the payments provided by the Gilbert-Hill contract in the principal sum of $6000, with the interest accrued from the first of June preceding, and Philp refused to make the conveyance of the property to Hill. The complainant then tendered to Philp the sum of $600 and demanded from him a conveyance of the property, which Philp refused to make until the balance of the purchase price due under the Gilbert-Hill contract was paid to him.

The complainant filed her bill in equity against Hill and Philp. The bill recited the making of the Gilbert-Hill contract, assignment thereof to Philp, the conveyance of the premises by deed of Gilbert to Philp, the making of the contract of purchase between Hill and the complainant, alleging that she did not learn that Hill did not have the fee simple title of record to the premises until she had made most of the payments to Hill on her contract with him; that Philp accepted the conveyance from Gilbert with full knowledge and notice, both actual and constructive, of the contract existing between her and Hill and of her possession of the premises; that Philp never at any time demanded that the payments under the contract be paid to him but permitted Hill to accept the payments from the complainant with full knowledge of all of the facts of the contract between her and Hill, and that during all the time after she took possession of the premises under such contract with Hill she had paid all the taxes assessed against the premises and had exercised at all times open, exclusive possession and active ownership of the premises. The bill recited the tenders made by her of the balance of the purchase price to Hill and Philp and offered to pay the balance of the purchase price to the defendants as the court should direct. The bill prayed that the defendants be de-

creed specifically to perform the agreement entered into between the complainant and Hill and to make a good and sufficient deed of conveyance to her for the premises. The bill also contained a general prayer for relief. In that proceeding the complainant was represented by able counsel. Answers were filed to the bill. The cause was heard and a decree entered dismissing the complainant's bill for want of equity. From that decree an appeal was prosecuted to the Appellate Court for the Fourth District by the complainant, and the Appellate Court affirmed the decree of the circuit court. (*Webb* v. *Hill,* 261 Ill. App. 268.) *Certiorari* was denied by this court.

Following the conclusion of that litigation, in June, 1931, Philp caused a demand for possession of the premises to be served upon the complainant. Possession not being surrendered, suit was brought by him in forcible detainer. On August 7, 1931, Gilbert, Philp and the complainant, while the forcible detainer suit was still pending, met in a law office in Mt. Vernon, the complainant being represented by counsel then and there present, such counsel not being the counsel who represented her in the equity suit heretofore mentioned, Philp and Gilbert each being represented by different counsel. Philp and the complainant then and there made and delivered a contract by the terms of which Philp agreed that if the complainant would pay the sum of $6823.16, which represented the total of the principal and interest then due on the contract between Gilbert and Hill, $523.16 of which was to be paid in cash and the balance to be paid in installments of $75 per month for the next twelve months, $80 per month for the second year, $90 per month for the third year thereafter, and the remainder to be paid on the seventh day of August, 1934, with interest at six per cent per annum, payable monthly, he would convey the premises to her by good and sufficient warranty deed. Linnie E. Philp, the wife of Walter Philp, joined in the contract. While this con-

tract recites that $523.16 was paid in cash, yet as a matter of fact it is admitted by all parties that Philp received only $323.16 and relieved the complainant from the payment of $200 of such cash payment. The complainant continued to make the payments of $75 per month on the last named contract for the period of one year. On September 2, 1931, she brought suit against Hill to recover the amount of the money which she had agreed to pay Philp in order to obtain title to the property. On the 23d day of June, 1932, she recovered a judgment against Hill for $6350. On February 11, 1933, she filed her bill in equity, and later, on August 30, 1933, filed her amended bill, making defendants thereto the appellees, Walter J. Gilbert, William E. Hill, Walter Philp and Linnie Philp.

The first eight paragraphs of the amended bill charge that the complainant is the owner in fee simple of the premises involved in this suit, recite the making of the Gilbert-Hill contract on September 1, 1920, aver that Hill took possession under such contract and occupied the premises continuously, fulfilling the contract until February 15, 1922, and that by virtue of the contract Hill was the equitable owner in fee simple of the real estate and had good right and lawful authority to sell and convey the same by virtue of said agreement; that by reason of the Gilbert-Hill contract Hill was the trustee of the purchase price of the premises for the use of Gilbert; that Gilbert held and retained the naked legal title for the purpose of securing the payments of such purchase price due under the contract and the fulfillment of all the covenants and agreements to be performed on the part of Hill, all subject to a condition of equitable defeasance by the payment of the installments of purchase money in accordance with the terms of the contract. The bill charges the making of the contract between Hill and the complainant, the assignment of the contract by Gilbert to Philp, the making of the deed thereafter by Gilbert to Philp, and that Philp took the assignment and deed

with notice of the purchase of the premises by the complainant, of her rights and equities therein, and that she had a homestead interest in the premises.

Without going more into detail, with the exception of the allegation as to the title and a homestead being in the complainant and only the naked legal title in trust in Philp for her, the averments of the first eight paragraphs of the bill are in legal effect identical with the bill in equity theretofore filed by the complainant against Hill. It would serve no useful purpose to set out at length the remaining paragraphs of the last named bill. The remainder of the bill is directed to an attack on the contract of August 7, 1931, asking that it be set aside on the grounds that the complainant was mistaken as to her then legal rights, was improperly advised, charging collusion on the part of the defendants and that they knew of her ignorance as to her rights. She asks for an accounting of the money paid and for the return of the $900 paid by her on such contract; offers to pay the original sum of $600 due on the Hill-Webb contract, and to satisfy the judgment against Hill or assign it to Philp, as the defendants might request or as the court might direct; prays that she be declared the absolute owner of the premises free of all encumbrances, that the deed to Philp be declared fraudulent and void, that it, with the contract of August 7, 1931, be severally set aside, and prays for an answer under oath.

To the amended bill the defendants filed their verified plea of *res judicata* to the first eight paragraphs, setting up *in hæc verba* the original bill of complaint filed in *Webb* v. *Hill, supra,* together with the answers *in hæc verba* of Philp and Gilbert in such proceeding, and the decree of the court dismissing complainant's bill for want of equity. The plea averred that Walter J. Gilbert had no interest in the present proceeding and that Linnie Philp was sued in the proceeding merely in the capacity of wife of Walter Philp. Verified answers were filed by all the defendants to the resi-

due of the bill. The plea was set down for hearing as to its sufficiency. The court ruled that he would dispose of the plea on the hearing of the case on the merits. Replications were filed to the answers and the cause heard in open court.

The evidence shows that the complainant, before making the contract of August 7, had consulted with competent counsel, and that she was represented by her personal lawyer at the time the contract of August 7, 1931, was entered into. This lawyer was a competent and qualified member in good standing of the Franklin county bar. He died prior to the time of the trial. There is not the slightest evidence that he was overwhelmed by opposing counsel in the preparation of the contract or the execution or delivery thereof, nor is there any evidence of any improper conduct on the part of any attorney in the negotiations leading up to the execution of such contract. On the contrary, the record clearly establishes that the complainant's then lawyer represented his client faithfully and honestly, to the best of his ability, in the transaction leading up to and the execution and delivery of such contract. In the suit brought by the complainant against Hill in the circuit court of Franklin county she was represented by still another and different counsel than the counsel appearing for her in the original litigation and the counsel appearing for her on August 7, 1931.

On the trial the complainant and her daughter each testified. They both admitted on cross-examination that they had testified to substantially the same things relative to the matters in litigation, except as to the contract of August 7, 1931, and events following thereafter, in the former case of *Webb* v. *Hill, supra.* The complainant testified that she signed the contract of August 7 as the result of the advice of her then attorney to execute such contract. The defendants in support of their plea offered in evidence the bill of complaint in the case of *Webb* v. *Hill,* with ex-

hibits attached thereto, being the Gilbert-Hill contract and the Hill-Webb contract, the separate answer of Hill and the separate answer of Philp, the decree of court and the certificate of evidence in that cause. The trial court sustained the plea of the defendants to the first eight paragraphs of the amended bill and found that the evidence failed to support the charges of collusion amongst the defendants charged by the bill, and that there was no proof of any acts of fraud against the complainant by the defendants or any of them; that the contract of August 7, 1931, was made by the complainant on her part on the advice of her then counsel, and the court entered a decree dismissing the amended bill for want of equity. From that decree this appeal is prosecuted.

It is argued by the complainant that inasmuch as her testimony and that of her daughter given at the former trial was contained in the certificate of evidence and such certificate was offered in evidence by the defendants, the latter vouched for the credibility of such witnesses and therefore are not now in a position to contradict their evidence. The certificate was not offered generally, but the offer made was limited to the purpose of showing the identity of issues in the former suit of *Webb* v. *Hill* and the present proceeding. The decree in the former proceeding did not undertake to preserve the facts as found and determined by the court in that proceeding. The certificate of evidence was a part of the decree, and it was properly in evidence for the purpose of establishing the issues tried. *Chicago Terminal Railroad Co.* v. *Barrett*, 252 Ill. 86.

It is ardently argued in this case by the complainant that the rule laid down by Pomeroy in his Equity Jurisprudence, (sec. 489, p. 173,) to the effect that where a person is ignorant or mistaken with respect to his own antecedent existing legal rights, interests, duties, liabilities or other relations, and in that situation enters into some transaction the legal scope and operation of which he does not

correctly comprehend nor its effect upon his rights and liabilities, equity, by reason of the person's ignorance or mistake as to the first premise, will grant relief either affirmatively or defensively, treating the mistake of law as analogous to, if not identical with, a mistake of fact. So far as we gather from the briefs of the complainant the mistake of law claimed under which she labored was that the legal title to the premises in question was in Philp, when, as a matter of fact, he only held the naked legal title for the benefit of the vendee, Hill, and in turn for the benefit of the vendee complainant, and that the equitable title to the premises was in her, as the vendee under the Hill-Webb contract. We have no quarrel with that rule, but it has no application to the case as made by the record now here for review.

It is argued that in contracts of sale and purchase, such as in the contract between Hill and the complainant, an equitable fiction is pronounced by which the real estate is converted into personal property as between the parties to the contract and that equity will treat the purchaser as the owner of the land and the seller as the owner of the purchase money, which is personal property. Following the rule to its logical conclusion, the seller is regarded as the trustee of the naked legal title for the benefit of the purchaser and the purchaser as the trustee of the purchase money for the benefit of the vendor. We do not dissent from this rule of equitable conversion. If there is a conversion, and, as in the contracts at bar, the vendor may terminate the contract, at his election, upon the default of the vendee in making his payments, retain the payments made and re-possess himself of the real estate, upon the termination of the contract by the exercise of such election by the vendor there then follows a re-conversion, by which the title both at law and in equity is re-invested in the vendor. In any event, whether we adopt the equitable doctrine of conversion or adhere to the strict legal technicalities that

the legal title is for all purposes and at all times vested in the vendor, or the further doctrine that the equitable title is vested in the purchaser and the funds stand·in his hands as security for the payment of the contract in favor of the vendor, the situation of the complainant, for all practical purposes, is not changed. By her original bill she prayed that the legal title of record be ordered to be conveyed to her by Philp. By the present bill she prayed for the same relief, or, in the alternative, that the legal title be held to be in her and the title of record standing in Philp be held a cloud upon the premises.

The important issue to be decided in the case is whether the defendants' plea was properly sustained. The point is made that the plea should have pleaded estoppel by verdict rather than estoppel by judgment. It is immaterial, so far as the merits are concerned, whether the plea is denominated a plea of estoppel by judgment or whether it is a plea of estoppel by verdict. The court will look to the contents of the pleading itself and from such inspection determine the character of the pleading, regardless of what it may be named by the parties filing the same. The subject matter of the litigation in the former bill and in the bill at bar is the same. There is identity of parties. Gilbert was not a necessary party to this litigation and the decree cannot in anywise affect him, regardless of what relief might be granted the complainant. Linnie Philp is the wife of Walter Philp. That is her only connection with the case, and she enters it by reason of having signed the contract of August 7, 1931, as the wife of Philp. The cause in the earlier proceeding grew out of two contracts referred to herein as the Gilbert-Hill contract and the Hill-Webb contract. The first eight paragraphs of the bill arise out of the same contracts. The complainant by her first bill prayed the defendants be compelled by the decree of the court to convey the legal title to the premises to her. By the present amended bill she alleges that the title to

said premises is in her and that Philp should be required to convey to her the legal title appearing in him of record, or, in the alternative, that the deed to the premises showing the title of record in Philp be set aside as a cloud upon her title to the premises. So far as the first eight paragraphs of the amended bill in the case at bar are concerned, they raise no different substantial issues from the relief sought in *Webb* v. *Hill, supra,* namely, the quieting of the title in the complainant to the premises in controversy. Under that bill the complainant could have, and it was her duty to have, presented all of her claims to the title to the premises. All of such matters were properly involved in that suit, and an adjudication could readily have been procured upon the allegations of the bill under the general prayer for relief. If the complainant omitted anything in her first suit by way of relief sought she cannot take advantage of the omission in the present suit. So far as the eight paragraphs of the present bill are concerned, there is nothing stated therein of which the complainant did not have full knowledge at the time of the filing of her first suit. So far as this record discloses, everything really pertinent to the present case was fully and ably presented in the first suit. The trouble with the complainant's case is, that until the making of the contract of August 7, 1931, there never was any privity of contract between her and Gilbert and Philp. All the matters here presented by the first eight paragraphs of the bill were issues in the first proceeding, and a final decree was rendered in that proceeding adversely to the complainant. If judgments and decrees are to have stability there must be an end to litigation and parties not be twice harassed for the same cause of action.

*Res judicata* has a fixed meaning in law. It embraces not only what was determined in the earlier proceeding but covers any and all matters which might have been presented and an adjudication thereon determined in such proceed-

ing. (*Rogers* v. *Higgins,* 57 Ill. 244; *Bennitt* v. *Star Mining Co.* 119 id. 9; *Lusk* v. *City of Chicago,* 211 id. 183; *Marie Church* v. *Trinity Church,* 253 id. 21; *Bailey* v. *Bailey,* 115 id. 551; *Godschalck* v. *Weber,* 247 id. 269.) When there has been a final judgment or decree neither party thereto should again be permitted to re-litigate by undertaking to change his position in the case and to force his adversary again to defend against the same matters and matters collateral thereto as were properly involved or might have been brought forth in the prior litigation, nor should the time of the court be taken in considering and deciding issues between the same parties involving the same subject matter where there has already been one final decision, which is still in full force and effect. Property rights and civil liberty cannot be properly safeguarded if parties are to be permitted, after final judgment and decree, to again litigate the same matters. Final decrees and judgments must be permanent in their character in order to give to the citizen a sense of security. The trial court did not err in determining that the decree in the case of *Webb* v. *Hill, supra,* was conclusive as to all the rights, interests and estates then existing in the complainant to the premises in question.

We now reach the contract of August 7. We have heretofore discussed it to some extent. The record shows that this contract was entered into by the complainant, she then and there being represented by capable and competent counsel. No advantage was taken of her in the making of that contract. It was not procured by any fraudulent misrepresentation on the part of the defendants. At the time this contract was entered into, Hill was in default on his contract with Gilbert and that contract was then owned by Philp. There was no contract relation between Philp and the complainant. Philp was then in a position to take possession of the property. By the contract of August 7 the complainant obtained the following concessions from

Philp: (1) The waiver of the breaches and defaults of Hill, the source through and from which her title must come; (2) an extension of time in which to pay the balance due on the Gilbert-Hill contract; (3) a reduction of $200 of the principal; (4) a reduction in the monthly payments from $100, which she was paying under the Hill-Webb contract, to $75 per month for the first twelve months and then a graduated increase thereafter annually; and (5) a reduction of the annual interest rate from seven per cent to six per cent. She must be held to have ratified this contract for two reasons: (1) She continued to make the payments thereon for a period of twelve months; and (2) she brought suit against Hill to recover the $6300 which he had defaulted on the Gilbert-Hill contract and which sum of money she had paid to Hill. This latter suit was not brought at the suggestion or request of the defendants or either of them. She did it upon advice of counsel. By her conduct in making the payments on the contract of August 7 and the recovery of the judgment against Hill she recognized the validity of the claim of Philp to the balance of the purchase money due on the Gilbert-Hill contract and substituted herself as the debtor for that sum. When she signed this contract she completely ratified and adopted the decisions of the court against her.

We have considered all the errors argued by the complainant against the correctness of the decree of the trial court, even though such alleged errors are not set forth at length in the opinion. There is no question but that the complainant has been unfortunate and that she has been taken advantage of and shamefully treated by Hill, but Gilbert, Philp and his wife are not guilty of any misconduct through which she has lost her money.

There is no reversible error in the record, and the decree of the trial court is affirmed. *Decree affirmed.*