(No. 29435.—

MILTON D. PEARSON, Appellant, *vs.* ALVA F. ADAMS *et al.*, Appellees.

*Opinion filed September 18, 1946.*

COTTON & MASSEY (ROBERT F. COTTON and HAROLD E. NIMZ, of counsel,) all of Paris, for appellant.

LAWRENCE B. MOORE, of Paris, and RALPH B. GREGG, of Indianapolis, Indiana, for appellees.

Mr. JUSTICE MURPHY delivered the opinion of the court:

This is an appeal from a decree of the circuit court of Edgar county entered in a specific performance suit. Plaintiff-appellant contracted to purchase 120 acres of farm land located in said county from Alva F. Adams, one of the defendant-appellees, and instituted this suit against him to obtain a deed. Adams interposed various defenses by motion and answer, after which plaintiff amended his complaint making Coletta Adams, wife of Alva F. Adams, a party defendant. The tenant in possession under Alva F. Adams was also made a defendant but no relief is sought against him on this appeal. The Adamses filed separate answers and Alva F. Adams filed a cross complaint. Evidence was heard before the court and a decree entered dismissing both the complaint and cross complaint for want of equity. Plaintiff appealed and Alva F. Adams filed a cross appeal. The Adamses join in the briefs filed in their behalf in this case.

In May, 1942, and for a time prior thereto, plaintiff owned and farmed a tract of land in Vigo county, Indiana. The government needed it in connection with the war effort to form a part of an ordnance district. Before the government had paid plaintiff for his land, and on May 7, 1942, plaintiff and defendant Alva F. Adams executed a contract whereby plaintiff contracted to purchase the 120 acres involved. The consideration was computed at $155 per acre, $1,000 of which was paid at the time of signing the contract, $3,000 was to be paid within a week thereafter, and the balance when plaintiff received compensation from the government for his Indiana farm. The contract of May 7 had been prepared by Adams's realtor agent and evidently was regarded by the parties as an insufficient memoranda. On May 14, they had a lawyer prepare a second agreement which provided for the same consideration and terms of payment as stated in the contract of

May 7. However, it was extended to include an agreement as to abstract of title, payment of taxes and other matters which had not been inserted in the first contract. Neither contract was signed by the wife of Alva F. Adams, but in the second agreement it was stated that when plaintiff accepted the title and made payment of the balance of the purchase price, defendant Alva F. Adams would deliver to plaintiff a warranty deed signed by himself and wife sufficient in form and substance to convey the fee simple title to plaintiff. No provision was made in either contract for compensation to plaintiff for damages that he would sustain in the event Adams's wife refused to join in the deed to release her inchoate dower interest in the land.

The prayer of plaintiff's amended complaint was drawn, partially at least, on the theory that a court of equity could grant him relief that would secure him against loss occasioned by Coletta Adams's refusal to release her inchoate dower. The first paragraph of the prayer was that Alva F. Adams be required to specifically perform his contract, which would be to deliver a warranty deed signed by him and his wife. The alternative part of the prayer was that in the event Coletta Adams refused to join with her husband in the deed, that a hearing be had, evidence be heard to fix the value of her inchoate interest in the land, and that part of the purchase price remaining to be paid to Alva F. Adams be abated in an amount equal to the value placed on such inchoate interest or the court could decree that the value of such interest be deducted from the purchase price and paid to Coletta Adams. As a further alternative, plaintiff prayed that Alva F. Adams be required to make provision to fully and adequately indemnify him against loss or damage that should accrue by reason of his failure to deliver the deed stipulated in the contract.

The defenses pleaded by Coletta Adams were that since she had not signed the contract the court was without

power to direct a release of her inchoate dower. Alva F. Adams pleaded that the contract of May 14 was without consideration, that it was obtained by the false and fraudulent representations of plaintiff and as a further defense he set up that he was married when the contract was executed, a fact which he stated plaintiff knew, that his wife had not signed the contract and declined to release her inchoate dower, and therefore, the contract could not be specifically enforced.

We are satisfied that the contract of May 14 rested upon the same consideration as the contract of May 7, and that Alva F. Adams's contention that the contract of the later date was obtained by false and fraudulent representation of plaintiff is without merit. There will be a fuller discussion of this in disposing of the cross appeal. Within four months after the contracts had been executed and before plaintiff had received his money for his Indiana farm, defendant caused notice of the cancellation of the contract to be served on plaintiff. After plaintiff received such notice, but on the same day, he received his compensation for the Indiana farm and he made a tender of the balance of the purchase price due under the contract, with interest thereon, as was provided in the contract. Defendant refused to accept the same and within thirty days thereafter caused a further notice to be served on plaintiff, in which he tendered plaintiff the $4000 which plaintiff had paid on the purchase price, plus $100, to cover plaintiff's expenses in seeding certain lands and demanded possession of that part of the property which plaintiff had entered upon. There is a controversy as to whether plaintiff had defaulted his contract by not making the payments as specified, but for the purpose of disposing of plaintiff's contention for relief, it will be assumed plaintiff had fully performed his covenants according to the contract and was entitled to a deed from Alva F. Adams. It is important to note that the chancellor found that plaintiff had refused

to accept a deed signed only by Alva F. Adams. No exception is taken to such finding.

It is well settled that an inchoate right of dower is an encumbrance within the terms of a covenant to convey by good and sufficient warranty deed; (*Cowan* v. *Kane*, 211 Ill. 572; *McCord* v. *Massey*, 155 Ill. 123;) that a court cannot compel a wife to release or convey her inchoate right of dower in lands which her husband has contracted to sell but to which contract she is not a party; (*Bartak* v. *Isvolt*, 261 Ill. 279; *Cowan* v. *Kane*, 211 Ill. 572; *Ebert* v. *Arends*, 190 Ill. 221;) and that where a vendor has covenanted to convey by warranty deed with his wife joining therein, but she was not a party to the contract and declines to sign the deed, a court of equity will require the vendor to convey by warranty deed all the interest he can release, leaving the purchaser the right to proceed against the vendor for damages for a breach of his covenants. *Rost* v. *Kremin*, 308 Ill. 79; *Bartak* v. *Isvolt*, 261 Ill. 279.

It is impossible to reconcile the conflict of views between the various courts and text writers on the question presented by plaintiff. A full and detailed annotation covering both viewpoints is set forth in 46 A.L.R. 748, and supplemented in 148 A.L.R. 292. The courts of this State have consistently held that a court of equity could not, in a specific performance action such as this, fix a value on an inchoate dower and order an abatement of the purchase price to offset such value. In *Humphrey* v. *Clement*, 44 Ill. 299, the trial court decreed specific performance of a contract for the sale and conveyance of land upon payment of $880 by the purchaser, the amount due on the contract. The decree provided that if the wife of the vendor should refuse to join in the deed, then the purchaser might retain $250 out of the purchase money. The decree was reversed on the ground that it was based upon conjecture, that there was nothing by which it could be determined whether

the wife would survive the husband. ⁙ In recognition that the reversal of the decree would work an injustice on the purchaser, the court said the decree was wrong in principle. "It is an instance in which a court of chancery, in an extreme anxiety to do equity, really does a wrong, for want of the means with which to act. Clement [the purchaser] certainly ought not to be compelled to take a title with a cloud upon it when he has bargained for a perfect one, and no court would compel him to take such title. But, on the other hand, when he comes into court and asks for a decree, the court should not attempt to go beyond its power. It can give him the husband's title, but it cannot compel the wife to release her dower, and it cannot decree compensation when there is no basis whatever for determining the amount."

In *Cowan* v. *Kane,* 211 Ill. 572, in disposing of the same question, Justice Cartwright, speaking for the court, said: "But in ordering the specific performance of a contract for the sale of land which does not fix a sum as liquidated damages for the failure of the wife to join in the deed, the chancellor has no power to provide for a deduction from the purchase money of any sum as the value of the inchoate right." The *Humphrey case* was cited and relied upon and comment was made on *Kauffman* v. *Peacock,* 115 Ill. 212, where the nature of an inchoate right of dower was discussed and where it was held that the inchoate right is not property which can be measured and does not become property until the death of the husband. In reference to the suggestion made in the *Cowan case,* that the value of the inchoate dower could be computed on the basis of mortality tables, the court said: "Such tables are used more from necessity than because they are a reliable guide in fixing the probable duration of any individual life, being mere averages of many lives, but we know of no tables by which the value of an inchoate right of dower can be approximately estimated. If Cowan [the vendor]

were dead and his wife surviving, mortality tables might be used as the best means of determining the value of her dower, but as they are both living, the chancellor would have to base his estimate on the supposition that she was to be the survivor, and if that could be done in any case, there is no evidence whatever in this record upon which even a surmise could be founded. It would be carrying the use of mortality tables to an unwarranted extent to apply them in such a case to determine substantial rights." Also, see *Clark* v. *Jankowski,* 255 Ill. 129.

Plaintiff recognizes the line of decisions which stand against his contention and the reason that supports them, but he contends that this court should now assert a power which has since *Humphrey* v. *Clement,* 44 Ill. 299, been regarded as lacking and adopt the view that it can ascertain the value of an inchoate dower and abate the purchase price to offset it. In this connection plaintiff refers to section 38 of the Probate Act enacted in 1939, as amended in 1943 (Ill. Rev. Stat. 1945, chap. 3, sec. 38, par. 189,) which provides that when real estate is sold on execution or in bankruptcy proceedings, or proceedings for the foreclosure of a mortgage, or for the enforcement of a mechanic's or vendor's lien, or for the payment of money "the owner of that real estate may commence a proceeding * * * for the purpose of acquiring the outstanding inchoate dower in the real estate upon payment of the value thereof. * * * In computing the value of the dower right, the expectancy of life of the spouse entitled to the dower right shall be determined by recognized mortality tables, and the amount to be paid to the spouse shall be determined as if the owner of the estate which gave rise to such inchoate dower had died on the date of the filing of the proceeding to acquire dower." It is argued that this statute evidences a change in the public policy of this State and that to be in accord with such policy this court

should overrule its holding in *Humphrey* v. *Clement,* and other cases. The public policy of a State is to be found embodied in its constitution, its statutes, and when these are silent on the subject, in the decisions of its courts. The statute relied upon singles out cases where there are involuntary sales and makes no reference to transactions voluntarily entered into by the parties. The argument that the former decisions of this court should be overruled by reason of the statute referred to is not persuasive.

The prayer for indemnification against loss by reason of Coletta Adams's refusal to release her inchoate dower is on the same basis and subject to the same criticism as the part of the prayer which asked for a fixing of value of the inchoate dower and abatement of the purchase price in an amount equal thereto. There is no basis for fixing the damages that might be sustained. If Alva F. Adams survives his wife, there would be no damage. On the other hand, if she survives him, her dower interest is, under the statute, subject to so many dispositions by her that it would be impossible at this time to determine the damage for which plaintiff should be indemnified.

We continue to adhere to the rule pertaining to a denial of abatement of the purchase price in cases of this character as announced in *Cowan* v. *Kane* and other cases.

Plaintiff invokes the rule that where a party to a contract seeks to avoid it and assigns certain grounds, he will thereafter be estopped from assigning different reasons for his repudiation of the contract. This principle has no application in this case, for the reason that the court's inability to decree specific performance is because of lack of necessary parties to the contract and is not dependent upon the default or action of the parties occurring after the contract was made.

As stated, the chancellor found that plaintiff refused to accept a warranty deed to the premises signed by Alva F.

Adams alone and such finding is in accord with the record presented here. Plaintiff having elected to take such position, there is no relief that equity can give in decreeing specific performance of the contract. Having foreclosed his right to a deed in accordance with the contract and the right to proceed for damages on a breach of warranty, the chancellor was correct in dismissing his complaint.

The relief prayed in defendant Alva F. Adams's cross complaint was founded on his alleged right to rescind the contract for want of consideration and fraud, both of which matters were pleaded in Adams's answer to plaintiff's complaint. In fact, the allegations of the answer in reference to these matters were realleged and brought into the cross complaint by reference. The facts pleaded to support the allegation that the contract of May 14 was without consideration are as follows: The agreement of May 7 was evidently hastily drawn by the realtor who acted as agent for Adams in making the sale. It is conceded that when it was executed it was agreed that another instrument should be typed and signed. In addition to the purchase price and terms of payment, the agreement of May 7 provided that Adams agreed to pay the taxes levied for 1941, to furnish plaintiff certain seed, to give him "crib room for his grain and room for his tools immediately, give possession now of house and pasture land." The rents and profits paid by the tenant then in possession were to be paid to plaintiff. The contract of May 14 recited the same consideration, for the same land with identical terms of payment as were contained in the contract of May 7. The provision in regard to possession was substantially the same as specified in the former contract, it being stated that the purchaser was to have immediate possession of the house, barn and approximately 11 acres of pasture ground. Matters included in the second agreement not mentioned in the first were as to the requirement that de-

fendant was to furnish an abstract of title and his covenant to deliver a warranty deed signed by himself and wife. There was also a provision in reference to insurance on the buildings covering the interim pending the consummation of the transaction by delivery of deed. The want of consideration is predicated on the theory that the second contract extends to provisions which were not included in the first and the charge of fraud is that the agreement made at the time the first contract was drafted was that the second contract should be identical with the first, and that when plaintiff delivered the second instrument to defendant for signature he stated that it was identical with the first, and that, relying on plaintiff's statement, defendant signed the contract without reading its provisions. It is alleged in the cross complaint that defendant caused notice of rescission of the contract to be served on plaintiff on September 22, and it is stated that such step was taken immediately after he learned of the differences in the provisions of the two contracts and of the fraud that had been practiced on him. He offers to do equity by returning the money advanced on the purchase price by plaintiff, less allowance for what may be found to be due from plaintiff to defendant. The prayer was that the contracts be declared void, that an accounting be had for the rents received by plaintiff, including the payment of taxes and other matters.

Without discussing the sufficiency of the allegation to establish, if proved, want of consideration and fraud, it will be noted that the admitted facts refute the theory on which defendants' claim is predicated. It is conceded there was to be a second agreement, and defendant's conduct following the execution of the contract of May 14 shows that the provisions added were evidently in contemplation of the parties when the first instrument was signed. The first act defendant did to breach his contract was to fail

to give plaintiff possession of a part of the premises as provided in both contracts. The emergency which confronted plaintiff to surrender possession of his Indiana farm forced plaintiff to pay Adams's tenant $500 for possession of the 11 acres of pasture land including some buildings all of which defendant had agreed should be surrendered to him immediately after the contract was signed. It will be observed that defendant was to furnish plaintiff an abstract of title and it is admitted that such abstract was furnished between May 14 and August 26, and that defendant delivered it with the request that it be submitted to certain attorneys for examination. Plaintiff accepted the title shown by the abstract. On August 25, defendant caused a notice to be served on plaintiff, stating that plaintiff had failed to perform his contract and by reason thereof defendant had elected to rescind it. He demanded return of possession of the property upon which plaintiff had entered.

Under the circumstances surrounding the making of the two contracts and the parties' conduct showing their interpretation of it, it is evident that the two instruments must be considered together as constituting the contract and that the sale price furnishes the consideration for all the provisions contained in both contracts. (*Hudnall* v. *Ham,* 183 Ill. 486; *Wilson* v. *Roots,* 119 Ill. 379; *Freer* v. *Lake,* 115 Ill. 662.) There is not the slightest evidence to show that defendant was overreached, or that he was influenced in any way by any misrepresentations of plaintiff which caused him injury. Defendant did not have the right to rescind the contract and the chancellor was correct in dismissing his cross complaint for want of equity.

On the whole case we find that when plaintiff filed his suit for specific performance of the contract he knew that under the decisions of this court he could not recover the relief prayed. Under such circumstances the rule is that the complaint will be dismissed, leaving plaintiff to his

action at law for damages. *Threlkeld* v. *Norris,* 300 Ill. 223; *Mack* v. *McIntosh,* 181 Ill. 633.

The decree of the circuit court dismissing the complaint and cross complaint for want of equity was correct and is affirmed. It is ordered that the costs on this appeal be taxed one half against plaintiff and one half against defendant Alva F. Adams.

*Decree affirmed.*