(No. 32069.—

ALVA F. ADAMS, Appellee, *vs.* MILTON D. PEARSON, Appellant.

*Opinion filed January 24, 1952—Rehearing denied March 17, 1952.*

BRISTOW, J., took no part.

Massey, Anderson & Gibson, of Paris, and Book-walter, Carter, Gunn & Hickman, of Danville, Raymond I. Massey, Robert Z. Hickman, and Horace E. Gunn, of counsel,) for appellant.

Acton, Acton, Baldwin & Bookwalter, of Danville, (W. M. Acton, and Harvey H. Acton, of counsel,) for appellee.

Mr. Justice Schaefer delivered the opinion of the court:

The circuit court of Edgar County entered summary judgment for the plaintiff, Alva F. Adams, in his action of ejectment against the defendant, Milton D. Pearson. The court also denied Pearson's motion for summary judgment on his counterclaim for specific performance against Adams and dismissed the counterclaim for want of equity. Pearson appeals to this court, a freehold being involved.

This case is a sequel to *Pearson v. Adams*, 394 Ill. 391, and the questions now presented relate primarily to the scope and effect of the judgment in that case. The facts concerning the transaction between the parties are fully set forth in our opinion in the earlier case. We state them shortly here. In May, 1942, Adams entered into a written contract to sell a farm to Pearson. Pearson made a down payment of $4000 and agreed to pay the balance of $14,600 when he received payment from the United States for his farm in Indiana which was being taken by the government in connection with the construction of an ordnance plant. Pearson went into possession of the farm in June, 1942, and has been in possession ever since, and has paid taxes and made improvements. The contract provided for a conveyance to Pearson by warranty deed, executed by

Adams and his wife. Adams's wife was not a party to the contract, and she refused to sign the deed. In August, 1942, Adams served notice of his election to rescind, and Pearson tendered the balance of the purchase price, to be turned over to Adams upon delivery of a deed as provided in the contract.

Pearson sued for specific performance, seeking relief of a type which had not theretofore been awarded in Illinois. The prayer was in the alternative, requesting (1) that the value of Mrs. Adams's inchoate dower be ascertained and the purchase price abated by the value of the dower interest, or (2) that the value of the dower interest be paid to Mrs. Adams and a deed free of that interest be executed by the master, or (3) that Adams be required to indemnify Pearson against the contingency that the dower interest might vest. There was also a prayer for general equitable relief. To this complaint Adams filed an answer, and a counterclaim seeking to rescind the contract and to be restored to possession. The trial court dismissed Pearson's complaint, on the ground that the relief sought was unauthorized, and also dismissed the counterclaim because no showing was made of fraud in the contract for the sale of the land. This court affirmed.

Thereafter the present action in ejectment was instituted by Adams. As the pleadings stood when the judgment now on appeal was entered, the third amended complaint alleged the contract for the sale of land, and restated all of the pleadings and the judgments of the trial court and of this court in the first case. It alleged further that Pearson had continued in possession of the property but had "failed to pay or tender the unpaid balance of the purchase price for said premises * * * except upon delivery * * * of a warranty deed signed by plaintiff and his wife" and had refused to accept a deed executed by plaintiff alone. The prayer for relief requested judgment for possession and damages by way of mesne profits.

The answer admitted the factual allegations as to the proceedings in the prior case but denied the allegations which stated the legal effect of those proceedings. As separate defenses, Pearson's answer alleged that his possession was lawful and that he had paid or tendered the full purchase price; that Mrs. Adams knew of the contract and of expenditures made by Pearson in reliance upon it; that Adams had schemed and colluded with his wife that she should refuse to sign the deed; that Adams had by his counterclaim in the first action sought possession and an accounting for rents, issues and profits, and that those claims, having been denied in the first action, are now barred by *res judicata*. Pearson also filed a counterclaim in which he prayed for a decree requiring Adams to perform specifically by delivering a warranty deed executed by Adams alone, without his wife's joinder in the deed. Adams's answer to this counterclaim alleged that Pearson was barred from the relief sought by the operation of *res judicata*, and also by an express election made in the course of the trial of the first case.

Both parties filed motions for summary judgment, Pearson seeking a decree directing the execution of a deed by Adams alone as prayed in the counterclaim, and Adams seeking a judgment for possession. A judgment was entered striking Pearson's special defenses, denying his motion for summary judgment, and allowing Adam's motion for summary judgment against Pearson for possession of the property. Leave was granted to Pearson to receive from the clerk of the court the money theretofore paid as a tender of the balance of the purchase price and, also, to receive from the clerk the $4000 which had been tendered by Adams as a return of the payments on the purchase price previously made by Pearson. A finding was made that Adams is the owner of the property in fee simple and entitled to its possession from Pearson. Accordingly, judgment was entered in favor of Adams and against Pearson

that Adams recover possession of the farm; that a writ of possession issue to Adams; that Pearson's counterclaim be dismissed for want of equity, and that the issue as to an accounting by Pearson to Adams for rents and profits remain upon the docket for further consideration. Pearson appeals.

The basic issues are whether Adams is entitled to a judgment for possession of the land and whether Pearson is entitled to a decree directing Adams to convey such title as he can. Each of the parties contends that the judgment in the earlier case bars his adversary from the relief now sought.

We consider first Adams's claim for possession of the farm. That claim is based upon the following allegations: "* * * defendant [Pearson] has failed to pay or tender to plaintiff the unpaid balance of the purchase price for said premises at the time stipulated therefor by said contracts of sale, or at all, and has never offered to do so except upon delivery by plaintiff to defendant of a warranty deed therefor signed by plaintiff and his wife, Coletta Adams; * * * That defendant failed to pay the balance of the purchase price payable under said contracts and agreements by defendant to plaintiff herein and failed to make any valid or legal tender thereof to plaintiff and that because of the facts alleged herein defendant has repudiated said contracts of sale and forfeited his right to the possession of said premises thereunder and that plaintiff is entitled to treat the same as rescinded because of the facts herein alleged and that said defendant is under a duty to surrender the possession of said premises because of the facts herein alleged."

In the earlier case, Adams had filed a counterclaim under which he sought to rescind the contract and recover possession of the farm. That counterclaim was based upon allegations of mistake on his part, fraud on the part of Pearson, lack of consideration, and also upon the

ground "that defendant [Pearson] breached and violated the alleged agreements and contracts for the sale of said premises in that he failed and refused to pay the balance of the purchase price therefor except upon the execution and delivery by plaintiff, Adams, and his wife, Coletta Adams, of a warranty deed to said premises to said defendant and that the payment of the balance due and owing upon said contracts of sale was a condition preceding [*sic*] to any obligation on the part of Alva F. Adams, plaintiff herein, to execute and deliver to said Milton D. Pearson any deed of conveyance to said premises * * *." Adams's claim for possession in the earlier case was based upon four contentions: mistake, fraud, want of consideration and Pearson's failure to tender payment except upon delivery of a deed executed by both Adams and his wife. Both the trial court and this court held that the claims of mistake, fraud and want of consideration were unfounded. The remaining ground upon which Adams sought to recover possession in the earlier case is based upon Pearson's tender of the balance of the purchase price, which was delivered to the clerk of the court to be turned over to Adams "upon the delivery of the deed as in said contract provided." That is the identical basis upon which Adams's claim to possession is predicated in the present ejectment action. In the earlier case, the trial court dismissed Adams's counterclaim for want of equity. Adams assigned cross error upon this portion of the judgment, but this court affirmed.

The facts upon which Adams now seeks to recover possession of the land existed when the earlier case was heard. And in that case they were presented both to the trial court and to this court as a basis for Adams's claim that he be restored to possession. So far as the record shows, nothing has since occurred which would alter the effect of that adjudication as a bar to the identical claim now presented by Adams. There is, as between the earlier

and present actions, identity of parties, subject matter and cause of action. Accordingly, *Pearson* v. *Adams,* 394 Ill. 391, is *res judicata* of Adams's present claim for possession of the land. *Boddiker* v. *McPartlin,* 379 Ill. 567; *Barry* v. *Commonwealth Edison Co.* 374 Ill. 473; *Webb* v. *Gilbert,* 357 Ill. 340; *Hoffman* v. *Hoffman,* 330 Ill. 413.

In behalf of Adams it is argued, however, that the opinion of this court in the former case does not show a specific decision adverse to him upon his claim for possession based upon Pearson's failure to tender the balance of the purchase price except upon the execution of a deed by Adams and his wife. That is true. It is well settled, however, that what has been adjudicated is to be determined not from the opinion rendered but from a consideration of the judgment actually entered in reference to the issues presented for decision. (See *Stanton* v. *Chicago City Railway Co.* 283 Ill. 256, 259; *Merlo* v. *Public Service Co.* 381 Ill. 300, 321; *Harrison* v. *Kamp,* 395 Ill. 11, 21.) The claim for possession which is now asserted by Adams was presented for decision by his counterclaim in the former case; it was decided adversely to him by the trial court when it dismissed his counterclaim, and that decision was affirmed by this court. Whatever the correctness or error of that decision, it is *res judicata* on the issue. (*People* v. *Kidd,* 398 Ill. 405; *Phelps* v. *City of Chicago,* 331 Ill. 80.) See *Chatkin* v. *University of Illinois, ante,* page 105, decided this day.

We turn now to Pearson's claim that he is entitled to a decree directing Adams to perform specifically by conveying title to the extent that he is able to do so by executing his own warranty deed. Adams contends that Pearson is barred from this relief by an election made during the course of the first trial, as well as by the normal operation of the doctrine of *res judicata.* During the trial of the first action the chancellor observed that there was nothing in the record to show that Pearson would not

accept a deed from Adams without his wife joining and that, as he understood the matter, Pearson would not accept such a deed. Pearson's attorney replied, "without prejudice to any and all rights we have—we think we are entitled to a decree from this court for a deed signed by Mr. Adams and Mrs. Adams; or if she doesn't join in the deed, to the relief that we have prayed for in our amended and supplementary complaint." To the specific question from the court, "You would not accept a deed from him alone?" the attorney answered, "Without prejudice to any of our rights that we may have, I would say at this time we would not." The chancellor found that Pearson had refused to accept a deed signed by Adams alone, and no exception to that finding was taken upon the appeal of the first case.

When Pearson instituted the first action for specific performance, our decisions had held that when a vendor contracted to convey by a deed executed by himself and his wife, and the wife thereafter refused to sign the deed, a court of equity would not attempt to value the wife's inchoate right of dower, nor would it compel the wife to convey or release that right; it would, however, direct the vendor to convey such interest as he could by his own deed, leaving the purchaser to proceed against the vendor for a breach of his covenants. (*Pearson* v. *Adams,* 394 Ill. 391, 396-7.) Pearson attempted to induce this court to broaden the relief available to a purchaser so situated by allowing an evaluation of the dower interest, and providing for a corresponding abatement of the purchase price or for an indemnity by the vendor against the possibility that the inchoate right might vest. To sustain his position he relied upon the decisions of other courts allowing relief of the type which he sought (see cases collected in 46 A.L.R. 748 and 148 A.L.R. 292) and upon the 1943 amendment to the Probate Act (Ill. Rev. Stat. 1943, chap. 3, par. 189,) which provided a method for the evaluation

of dower interests and a procedure for extinguishing those interests in many situations. This court rejected his argument that the statutory change indicated a change in the public policy of the State, refused to follow the decisions of other jurisdictions, and adhered to the rule which denied evaluation of the dower interest in specific performance cases.

It is clear that specific performance by a deed signed by Adams alone was available to Pearson when he instituted his first action. An alternative prayer for that relief could have been included in his complaint, even though that was not the relief which he preferred to obtain. And he could have appealed from a decree which denied the preferred alternative, and thus have obtained the ruling of this court upon his main contentions. (*Arndt* v. *Arndt,* 399 Ill. 490.) Indeed, the relief which he now seeks was then available to him under the prayer for general relief in his complaint. The claim of collusion between Adams and his wife in bringing about her refusal to sign the deed, which was asserted by Pearson as a separate defense, was likewise available when the former action was instituted.

The cause of action which was asserted by Pearson in the earlier case, specific performance to compel a conveyance, is the same cause of action which is now asserted by his counterclaim in the present case. The parties are the same. In such a situation, the doctrine of *res judicata* embraces not only what was actually adjudicated, but also those matters which could have been adjudicated. (2 Freeman on Judgments, sec. 675; *Barry* v. *Commonwealth Edison Co.* 374 Ill. 473; *Webb* v. *Gilbert,* 357 Ill. 340.) As pointedly observed in the case last cited: "When there has been a final judgment or decree neither party thereto should again be permitted to re-litigate by undertaking to change his position in the case and to force his adversary again to defend against the same matters and matters collateral thereto as were properly involved or might have

been brought forth in the prior litigation." The relief now sought by Pearson falls within the normal operation of the rules of *res judicata.*

From what has been said it follows that the application of the normal rules of *res judicata* results in a determination that the claim presently made by each of the parties is barred by the adjudication in the former case. The result of such a disposition of the case, however, would be unsatisfactory. Without pursuing the various legal questions which would be generated, it would appear, at best, to leave the parties after nearly ten years of litigation, with actions at law, centering about either the payment of the remainder of the purchase price or the recovery of damages for breach of the contract; and whichever party instituted such an action would have to give up his claim to the farm property. At worst, either through a technicality or legal mistake arising from the lengthy litigation, or through the operation of the Statute of Limitations, one or both parties may be denied some essential portion, if not all, of the relief due him.

Application of the doctrine of *res judicata* has, on occasion, produced curious results. "Defendant may continue to sleep in plaintiff's bed though not under plaintiff's bed-quilts. [*Farrington* v. *Payne,* 15 Johns. 432.] Defendant may continue to occupy plaintiff's real estate even though plaintiff has a judgment awarding him possession. [*Hahl* v. *Sugo,* 169 N. Y. 109, 62 N.E. 135.] The insurance company need not pay the widow all it owes her. [*Jacobson* v. *Mutual Ben. Health & Accident Ass'n,* 73 N. D. 108, 11 N.W. 2d 442.]" (Cleary, Res Judicata Re-Examined, 57 Yale Law Journal, 339.) These results have been thought to be warranted by the basic public policy against relitigation which supports the rule against splitting a cause of action. But in numerous cases that rule has been relaxed where the omission was due to ignorance, mistake or fraud. (142 A.L.R. 905.) In *White* v. *Adler,*

289 N. Y. 34, 43 N.E. 2d 798, the court considered whether or not a second action could be maintained to enforce the statutory liability of bank stockholders after one judgment had already been rendered against them. Stating the question to be "* * * whether under the circumstances here presented the ordinary rule against splitting causes of action should be applied, and a second recovery denied upon part of defendants' statutory liability which the plaintiff omitted to assert in the prior action," the Court of Appeals held that the circumstances of the case, which included the existence of a "grave legal question" as to the defendants' liability upon the shares of stock involved in the second action, justified the court in relaxing the rigid application of the ordinary rule.

We turn, therefore, to a more detailed consideration of the relative positions of the parties. In the case at bar the equities are clearly with Pearson, the purchaser. The seller's unwarranted effort to rescind the contract precipitated the initial litigation and his continued effort to regain possession of land which he had willingly contracted to sell has resulted in the continuance of the litigation and in the present impasse.

Like considerations do not apply to Pearson. His original action was an effort to secure from a court of equity in this State a type of relief which is regularly afforded by the courts of some other jurisdictions but which had not theretofore been available in Illinois. His belief that the amendment to the Probate Act providing for the evaluation and extinguishment of dower afforded a basis for a broadened type of relief in specific performance actions cannot be said to be unreasonable, even though this court did not accept the arguments he advanced. The colloquy with the trial court during the first trial does not indicate a fixed and conclusive determination that under no circumstances would he accept a deed executed by Adams alone. His attorney's guarded answer, that "without preju-

dice to any and all rights we have * * * at this time we would not" accept such a deed, suggests rather an effort to obtain a square determination as to the availability in Illinois of relief of the type he sought, than a flat rejection of such a deed. That his attorney apparently feared that he could not request less satisfactory relief without forfeiting the remedy he actually desired should not subject him to penalty. Here, as in the *White case,* the plaintiff's course of action was influenced by the existence of a grave legal question.

If it were not for the fact that the broadened remedy which Pearson originally sought could have been requested as alternative, instead of exclusive, relief, his situation would fall squarely within the general rule that "Where a judgment is rendered in favor of the defendant because the plaintiff seeks a form of remedy which is not available to him, the plaintiff is not precluded from subsequently maintaining an action in which he seeks an available remedy." (Restatement of the Law, Judgments, sec. 65(2).) The relief sought by Pearson in his present counterclaim is equitable to both parties; it gives to each what is his due and it is the relief typically awarded in a situation such as this. We hold therefore that under the circumstances of this case the relief sought by Pearson in his counterclaim is not barred by the doctrine of *res judicata,* but is available to him.

We do not hold, as has been held, that exceptions to the application of the rule against splitting a cause of action should be regularly recognized "as the evident justice of the particular case requires." (*State ex rel. White Pine Sash Co.* v. *Superior Court for Ferry County,* 145 Wash. 576, 261 Pac. 110, 111.) This case, in which both parties would be barred by ordinary application of the rules of *res judicata* with an unsatisfactory and perhaps inequitable result, presents a unique and nonrecurrent situation. The policies which underlie the doctrine of *res judicata*—pro-

tection of the defendant from harassment and of the public from multiple litigation—are not applicable to the peculiar facts here involved.

It follows that the trial court erred (1) in entering summary judgment for Adams in his action of ejectment against Pearson, for the reason that his claim for possession was barred by the former proceedings between the parties and (2) in denying Pearson's motion for summary judgment on his counterclaim for specific performance by Adams alone.

The judgment of the circuit court of Edgar County is reversed and the cause remanded, with directions to deny Adams's motion for summary judgment against Pearson and to allow Pearson's motion for summary judgment on his counterclaim against Adams.

*Reversed and remanded, with directions.*

Mr. Justice Bristow took no part in the consideration or decision of this case.