## Jennie Maude Bailey, Appellee, v. Everett D. Bailey, Appellant.

1. CONTRACTS—*what essential to sustain articles of separation.* Articles of separation making a provision for the wife will be upheld by a court of equity only if it appears that the agreement was fairly and voluntarily entered into, and was free from any sort of fraud,

coercion or duress; and, further, if the provision for the wife was fair and equitable in view of the property of the husband, the needs of the wife and their station in life.

2. DIVORCE—*what does not deprive court of equity of jurisdiction of children in cases of divorce.* No agreement between the parties can deprive a court of equity of its power over the custody of children.

Divorce. Appeal from the Circuit Court of Effingham county; the Hon. THOMAS M. JETT, Judge, presiding. Heard in this court at the March term, 1910. Affirmed. Opinion filed August 5, 1910. *Certiorari* denied by Supreme Court (making opinion final).

WRIGHT BROS. & DENTON, for appellant.

R. C. HARRAH and S. F. GILMORE, for appellee.

MR. JUSTICE SHIRLEY delivered the opinion of the court.

Appellee brought her bill for divorce charging appellant with extreme and repeated cruelty. In addition to her prayer for divorce she prayed for the custody of the children, and for alimony, and also for the annulment of an alleged prior agreement whereby she had released to appellant in consideration of one dollar all rights growing out of the marriage relation, including support, and also the custody of two of their three children.

Appellant answered, denying the acts of cruelty and filed his cross bill charging appellee had committed adultery and prayed for a divorce and custody of the children. Appellee having answered the cross bill and a jury being waived the cause was heard by the chancellor who found the equities in favor of appellee on the original bill and against appellant on his cross bill. A decree was accordingly entered dismissing the cross bill and granting appellee a decree for divorce and alimony and awarding to her the custody of the children, setting aside the alleged prior agreement, and ordering appellant to pay alimony at the rate of eight dollars per month, from which decree appellant brings the cause here by appeal.

The action of the court in granting appellee a decree and in dismissing the cross bill is assigned for error on the

ground the evidence is insufficient to sustain the decree, and that the decree is contrary to the law and the evidence.

After an examination of the evidence contained in the transcript, we find it sufficient to sustain the finding of the chancellor that appellant was guilty of cruelty.

Appellee testified to numerous acts of physical violence. She says he began by slapping her when she did not act to suit him; that he whipped her with a switch leaving marks upon her person; that he struck her with his fist a violent blow which blackened her eye and she left him for several days, returning upon his promise he would not abuse her; that after her return he again mistreated and slapped her, and in January, 1909, upon his refusal to allow her to go to church with him, she started to a neighbor's with the children and while on the way he overtook her and kicked her twice, and as she turned he kicked her in the side. She testifies that the result of this was a miscarriage shortly afterwards. Appellant admits that on this occasion he kicked her, and she is in some degree corroborated by other witnesses, as to some of the other acts of cruelty, who saw marks of violence upon her person.

To prove the issue made by the cross-bill appellant introduced a witness Charles Babbs, also his wife Nellie. Both testified they were living at the home of appellant for a short time in December, 1908; that they occupied a room adjoining appellee; that between the two rooms there was an opening but no door; that Babbs arose early in the morning to go to the kitchen to build a fire; that when he reached the opening he saw appellee in bed and in the same bed one Harry Robinson; that Babbs told his wife Nellie, who then went to the opening and looked upon the same scene. Appellant testified that in February afterwards while Robinson was at his home appellant, after supper, pretended he was going to a lodge meeting and asked Robinson to go but he declined. Appellant testified he went out, but instead of going to the lodge went to the barn, remained there and in the yard until appellee went to bed; that he then went to the north side of the house; that Robinson went to appellee's bed where he

heard them talking and whispering, and heard the bed; that Robinson after a few minutes returned to his bed, and that appellee went back to the barn, threw down some hay, then went into the house and went to bed. Appellee denies these statements of the Babbs and the appellant.

The Babbs were relatives of appellant. They left there and went to Sangamon county without mentioning it to any one even to appellant. That appellee would engage in an act of adultery as she lay with her three children, and in a room next to the one occupied by the Babbs with an opening between, affects in some degree the probability of the testimony.

The probability of the statement of appellant is also affected by the fact as appears from the evidence, that after he claims to have heard Robinson and his wife together, he slept in the same bed with Robinson the same night. It further appears he said nothing about it until ten days afterwards, and when Robinson was at the place soon after, appellee spoke of the accusation in the presence of appellant. What was there said by Robinson is a matter of dispute. Appellant testifies Robinson said he would have nothing to say in their troubles while appellee states that Robinson denied it. A number of witnesses testified to the good reputation of appellee for chastity, and as the trial judge saw the witnesses and heard them testify, we are of opinion he committed no error in finding the equities with appellee upon the issues made by both the original and cross bills.

At the time of the separation of the parties on February 27, 1909, they entered into an alleged written agreement reciting they intended to live separately, and for the purpose of settling their property rights and the custody of the children, they agreed that in consideration of one dollar, and one-half of all the household goods and one cow, appellee discharged and released appellant from all rights and demands growing out of the marriage relation including the right of support, and released him from all demands of whatever nature. It was further agreed appellee should have the custody of one of the children which she should support and

educate at her own expense, and that appellant should have the custody and care of the other two children. And each agreed to join in the execution of any deed or mortgage to any property then owned, or to be acquired by either of the parties.

Articles of separation making a provision for the wife would be upheld by a court of equity if it appeared the agreement was fairly and voluntarily entered into, and was free from any sort of coercion, duress or fraud, and it should further appear that the provision for the wife was fair and equitable in view of the property of the husband, the needs of the wife, and their station in life. In cases of divorce no agreement between the parties can deprive a court of equity of its power over the custody of children. By section 18, of chapter 40 of the Revised Statutes it is provided "the court may make such order touching the care, custody and support of the children or any of them as from the circumstances of the parties shall seem reasonable and just" and in making such order "the controlling consideration is the welfare of the child and not the gratification of either parent." Umlauf v. Umlauf, 128 Ill. 379.

In the disposition of the children the court acted within its power and nothing appears here that such disposition was not a proper one.

We are of opinion that the court was warranted in annulling the agreement so far as the provision of the wife was concerned. Waiving the testimony of the wife that it was procured by threats, the evidence shows she was ignorant of her rights and considering the amount of property owned by him, the provision for her was inadequate and unfair.

The decree of the Circuit Court was right and is affirmed.

*Affirmed.*