ILLINOIS NATIONAL BANK, a Banking Corporation, As Conservator of the Estate of Earl Davenport, and Nellie Davenport, Plaintiffs,

v.

UNITED STATES of America, Defendant.

Civ. No. 2564.

United States District Court
S. D. Illinois, S. D.

April 6, 1959.

———◇———

Olsen & Cantrill, Springfield, Ill., for plaintiffs.

Harlington Wood, Jr., U. S. Atty., Springfield, Ill., Garry A. Pearson and Herbert Awe, Department of Justice, Washington, D. C., for defendant.

POOS, District Judge.

Plaintiffs, Illinois National Bank, a banking corporation, as Conservator of the Estate of Earl Davenport, and Nellie Davenport, filed suit against the United States of America, defendant, praying judgment for the sum of $15,231.12, interest thereon and costs. The theory of plaintiffs is that the District Director of Internal Revenue for the 8th District of Illinois had made an illegal assessment of income tax against plaintiffs for the year 1948 in this that the District Director disallowed as a deduction from the sale price of farm land the sum of $56,-610.42. The land in question was sold on the 3rd day of January, 1948, to J. Garrett Tolan and Marie Tolan by Warranty Deed, recorded on this date, by plaintiffs. In the income tax return filed for the year 1948, the taxpayers reported a sale of the land in question for the sum of $120,221.75, which had an original cost of $66,575.25, leaving a profit on the sale of $53,646.50. The taxpayers deducted from this profit the sum of $56,610.42, itemized as follows: $52,000 to Mayme Davenport, a former wife, $1,-153.34 and $206.67 for interest paid on a farm loan, $606.28 for taxes, $2,400 commissions paid to a real estate salesman, and $242.13 for miscellaneous expense in connection with the sale. This left a net loss of $2,963.92. The only item in dispute between the parties is the deduction of $52,000 paid to Mayme Davenport the former wife, under a contract of property rights settlement which will hereinafter be referred to. The District Director disallowed this figure on the theory that it was a lump sum alimony settlement to Mayme Davenport.

The parties have stipulated that on January 17, 1949, Earl and Nellie Davenport, husband and wife, filed their joint income tax return for the year 1948; that on April 17, 1952, the Commissioner of Internal Revenue timely assessed the deficiency against plaintiffs for the year 1948; that the total deficiency of $12,-747.66 plus interest of $2,483.46 was paid; that on October 11, 1955, plaintiffs filed a timely claim for refund, which

was formerly denied on September 10, 1956, and that the complaint herein for a judgment against the United States was timely filed on September 9, 1958; and that the Court has jurisdiction of the subject matter.

The facts in the record are not in dispute.

The factual statement is as follows:

Prior to July 25, 1947, Earl Davenport, one of the parties plaintiff, and Mayme Davenport were husband and wife, and on this date the Circuit Court of Sangamon County, Illinois, at Springfield, entered a decree for divorce between the parties on the grounds of desertion. Prior to this time and on July 18, 1947, these parties entered in a property rights settlement in the following language, viz.:

"Post Nuptial Stipulation and Settlement of Property Rights.

"This contract and agreement made and entered into this 18th day of July, 1947, between the Plaintiff, Mayme Davenport and the Defendant, Earl Davenport, in settlement of all property rights and interests of and between the said parties, and all questions of alimony, maintenance and support, to be valid and binding upon the parties hereto when and if a decree of divorce is entered in the above entitled cause.

"Whereas said Mayme Davenport, Plaintiff, has heretofore on or about the 9th day of October, 1946, filed a Complaint in this cause for divorce against the Defendant, Earl Davenport. And, whereas the parties hereto have negotiated for a settlement of their marital disputes and property rights and have reached an agreement for the settlement thereof to be valid and binding upon the parties hereto in the event a decree of divorce is procured by the said Mayme Davenport; and whereas the parties hereto and their respective attorneys desire to agree and stipulate in writing their agreement for such settlement, it is stipulated, covenanted and agreed as follows:

"1. That the Plaintiff, Mayme Davenport, intends to file an Amended Complaint for divorce in the above entitled cause,

"2. The Defendant, Earl Davenport, will convey to the Plaintiff all his rights, title and interest by Quit Claim Deed in and to all real estate owned by the Plaintiff, Mayme Davenport, and the Plaintiff, Mayme Davenport shall Quit Claim to the Defendant all her rights, title and interest in the real estate owned by the Defendant, Earl Davenport, subject to the provisions hereinafter set forth.

"3. That the Defendant, Earl Davenport, will pay to the Plaintiff, Mayme Davenport, the sum of Fifty-two Thousand Dollars ($52,000.00) in full settlement of all her right, title and interest in the real estate of the Defendant, and as settlement of her property rights, claim for alimony or support money and including her attorneys fees and court costs, said sum of money to be paid in the manner following:

"That the Defendant shall pay to the Plaintiff, Mayme Davenport, the sum of Ten Thousand Dollars ($10,000.00) within thirty days of the date of the decree to be entered in this cause: and a further sum of Forty-Two Thousand Dollars ($42,000.00) within sixty days of the date a decree is entered in this cause; provided that if the Defendant is unable to furnish the entire sum aforesaid, the said Defendant will procure a first mortgage of Twenty Thousand Dollars ($20,000.00) on his land in Sangamon and, or Menard Counties in the State of Illinois, with the exception and omitting the land acquired by Will or inheritance from his father and mother, consisting of One hundred thirty-two (132) acres more or less in Cartwright Township in Sangamon County, Illinois; and at the same time said Defendant will give said Mayme Davenport or to such person or persons as she may designate a second or Junior mortgage on said real estate, subject only to a prior first mortgage of Twenty Thousand Dollars ($20,000.00) and subject to no other liens or encumbrances of any kind, which said second mortgage shall be made for a term not to exceed five (5) years with interest at the rate of four (4%) per cent per annum, payable semi-annually, and which second mortgage shall provide further that in the event the first mortgage shall become in default in the payment of interest or otherwise, the owner and holder or holders of said second mortgage may elect to declare said mortgage due and payable, and shall have all rights to exercise in order to protect the interests of the holder or holders in every respect as to said first mortgage; and said second mortgage shall provide for the prompt payment of interest and taxes and for reasonable insurance on the improvements and with the rights of foreclosure and for receiver in the event such default may occur.

"4. That the Plaintiff, Mayme Davenport, until March 1, 1948, shall have the right to use, occupy and have possession of the dwelling on the premises now occupied by her free of any charge for use or rent, and she shall have the further right for one Walter Marcussen and his family to continue to live on said premises and to use and occupy such parts thereof consisting of barns, sheds, cribs and other out buildings as are now used and occupied by him, until March 1, 1948, without charge for use or rent.

"5. That the Defendant, Earl Davenport, shall dismiss his suit against Walter Marcussen for possession of real estate, now pending before Charles McBrian, Justice of the Peace in Springfield, Illinois, such suit to be dismissed immediately.

"6. That the Defendant, Earl Davenport shall have the right to go upon the premises at any reasonable time prior to March 1, 1948, for the purpose of inspecting or managing his interests in the crops growing or grown on said premises and to manage, inspect and oversee the planting, cultivation, harvesting, division and delivery of crops; and that the said Walter Marcussen shall not be permitted to deliver any grain from said farm without the consent of said Defendant.

"7. That Plaintiff, Mayme Davenport, and Walter Marcussen shall surrender possession of the real estate now occupied by them, not later than March 1, 1948.

"8. In the event the Defendant, Earl Davenport, shall sell, mortgage, or in any way encumber any or all real estate that he owns except the One Hundred-thirty two (132) acres in Cartwright Township, of Sangamon County, Illinois, and any and all moneys thus derived from such sale or sales, mortgage or mortgages shall first be applied and paid on the lien or liens of the Plaintiff, Mayme Davenport, which is in the aggregate sum of Fifty-two Thousand Dollars ($52,000.00) before her lien or liens on said real estate shall be reduced; and the said liens or lien of the said Mayme Davenport shall be paid and satisfied in full by the Defendant, Earl Davenport, before any other claim or claims against said real estate are paid.

"9. It is covenanted and agreed that each and all of payments of money above mentioned shall be considered as owing by the said Earl Davenport to the said Mayme Davenport from the time the decree is entered in the above entitled cause, and that henceforth all said sums to be paid shall be paid to the said Mayme Davenport regardless of whether she remarries; and in case said Mayme Davenport should depart this life before said payments above mentioned have been made, it is understood and agreed that the unpaid balance of said money shall continue to be payable and owing by the said Earl Davenport; and in such case such unpaid sum shall be payable to the heirs, executors, administrators, legal representatives or assigns of said Mayme Davenport, Furthermore, it is expressly understood and agreed that all the obligations of the said Earl Davenport provided for in this contract of settlement shall be binding upon said Earl Davenport, his heirs, executors, administrators and assigns until all of said obligations are fully paid and discharged.

"10. Subject to any liens which now appear of record against the land of said Earl Davenport, it is expressly covenanted and agreed that it shall be expressly provided in the final decree in the above entitled cause that there shall continue to be a valid subsisting, binding and enforcible lien on all the real estate and personal property which said Earl Davenport now owns or which may hereafter come to him; and that for the purpose of enforcing said lien, it may in all respects be treated as a binding and subsisting lien of the same kind and character as a mortgage to secure the performance of each and all of the obligations and payments to be performed and paid by said Earl Davenport to the said Mayme Davenport as herein provided, and that in case of default, said lien may be foreclosed in the same manner and form of proceedings as is followed in foreclosures of mortgages and that in case of such default said Earl Davenport hereby covenants and agrees that in case of foreclosure of said lien or liens, he and his said property shall also be liable for all court costs, attorney fees and all other expenses incurred by said Mayme Davenport in foreclosing said lien.

"11. It is understood and agreed that in case a decree is entered in this cause, this contract and each and all of the terms thereof shall be incorporated in such decree, and may be considered a part of such decree.

"In Witness Whereof, parties hereto have hereunto set their hands and seals the day and year first above written.

"Mayme Davenport    (Seal)

"Earl Davenport    (Seal)"

Thereafter on July 25, 1947, a decree for divorce was entered in the suit of Mayme Davenport and against the defendant, Earl Davenport, one of the plaintiffs herein. Thereafter a marriage was entered into by and between Earl Davenport and Nellie Davenport and these parties Earl Davenport represented by his Conservator and his wife, Nellie are the taxpayers and parties plaintiff.

The decree for divorce entered at the suit of Mayme Davenport dissolved the bonds of matrimony between the parties

and among other things insofar as pertinent here provided as follows:

"It is further ordered, adjudged and decreed by the court that said settlement contract (of which a copy is hereto attached marked 'Exhibit A') is a proper and binding final settlement contract with regard to all matters of alimony and property settlement freely entered into between the parties; and said written contract is hereby approved by the court; and each and all of the allegations and provisions thereof are enforceable and binding on each of the parties thereto, their heirs, executors, administrators, legal representatives and assigns.

"The Court finds that as a part of the consideration to the said Mayme Davenport for her waiver of future claims for property and alimony, the said Earl Davenport has agreed to pay to the Plaintiff, Mayme Davenport, the sum of $52,000.00 (Fifty-two thousand dollars) in full settlement of all her right, title and interest in the real estate of the Defendant, and any settlement of her property rights, claim for alimony or support money and including her attorney's fees and court costs, said sum of money to be paid in the manner following:

"Said defendant shall pay to the Plaintiff, Mayme Davenport, the sum of ten thousand dollars ($10,000.00) within thirty days of the date of the entry of this decree; and a further sum of forty-two thousand ($42,000.00) within sixty days after the date of the entry of this decree in this cause; provided that if the Defendant is unable to furnish the entire sum aforesaid, the said Defendant will procure a first mortgage of twenty thousand dollars ($20,000.00) on his land in Sangamon and Menard Counties in the State of Illinois, with the exception and omitting the land acquired by will or inheritance from his father and mother consisting of one hundred and thirty-two acres (132) more or less in Cartwright Township in Sangamon County, Illinois; and at the same time said Defendant, Earl Davenport, shall execute and deliver to Mayme Davenport or to such person or persons as she shall designate a valid legal binding second or junior mortgage on said real estate subject to a prior first mortgage of twenty thousand dollars ($20,000.00) and subject to no other liens or incumbrances of any kind, which said second mortgage shall be made for a term not to exceed five years together with interests at the rate of four per cent (4%) per annum payable semi-annually and which second mortgage shall provide further that in the event the first mortgage shall become in default in the payment of interest or otherwise, the owner and holder or holders of said second mortgage and the note hereinafter mentioned may elect to declare said second mortgage due and payable and shall have all rights to exercise in order to protect the interest of the holder or holders of said note or mortgage in every respect as to said first mortgage; and said second mortgage shall provide for the prompt payment of interest and taxes and for reasonable insurance of the improvements and with the rights of foreclosure and for receivership in the event such default may occur; and at the same time said defendant shall execute and deliver to the plaintiff a note in the like sum and of the same tenor, which said note shall be secured by said second mortgage.

"The Plaintiff, Mayme Davenport, shall have the right and privilege to use, occupy and have possession of the dwelling of the premises now occupied by her free of any charge, for use or rent, and she shall have the further right for one Walter Marcussen and his family to continue to live on said premises and to use and occupy such parts thereof consisting of barns, sheds, cribs and other out buildings as are now used and occupied by him or the Plaintiff until March 1st, 1948, without charges for use or rent, but said Plaintiff and said Walter Marcussen and his said family shall surrender possession of the said real estate now occupied by them or to which said Earl Davenport has title not later than March 1st, 1948.

"It is further ordered, adjudged and decreed that in the event said defendant, Earl Davenport, shall procure part of the money for settlement from or through plaintiff, Mayme Davenport; and in the event said Defendant, Earl Davenport, shall sell any part of said real estate to be mortgaged; he shall apply and pay the money realized from such a sale on either the first mortgage or second mortgage above mentioned; and no sale of said real estate described in either of said mortgages shall be made by said Earl Davenport until he first shall have secured the written consent of plaintiff, Mayme Davenport or her authorized agents or attorneys to such sale unless the entire mortgaged real estate shall be sold by him subject to both of said mortgages.

"It is further ordered, adjudged and decreed by the Court that each and all of the payments of money above mentioned shall be considered as owing by the said Earl Davenport to the said Mayme Davenport from the time the decree is entered in the above entitled cause, and that henceforth the said sums to be paid, shall be paid to the said Mayme Davenport regardless of whether she remarries; and in case the said Mayme Davenport should depart this life before said payments above mentioned have been made, the unpaid balance of said money shall continue to be payable and owing by the said Earl Davenport, and in such case such unpaid sum shall be payable to the heirs, executors, administrators, representatives, or assigns of said Mayme Davenport; provided for in said contract, copy of which is hereto attached and made a part of this decree, shall be binding upon said Earl Davenport, his heirs, executors, administrators, and assigns until all of said obligations are fully paid and discharged.

"It is further ordered, adjudged and decreed that subject to any liens which now appear of record against the land of the said Earl Davenport, all the provisions of said written settlement contract as shown in 'Exhibit A' hereto attached and the provisions of this decree shall continue to be a valid binding subsisting lien of the same kind and character as a mortgage to secure the performance of each and all of the obligations and payments to be performed and paid by the said Earl Davenport to the said Mayme Davenport as herein provided and that in case of default, said lien may be enforced and foreclosed in the same manner and form of proceedings as is usually followed in foreclosures of mortgages; and that in case of such default and foreclosure of said lien or liens the said Earl Davenport and his said property shall be liable for all court costs, attorneys fees, and all other expenses incurred by said Mayme Davenport in foreclosing said lien.

"It is further ordered, adjudged and decreed by the court that upon a full and final payment by the said Earl Davenport of all the sums of money provided for in said written settlement contract, and a full compliance with all the terms and provisions of said written settlement contract and of this decree the same shall be in full of all claims of said Mayme Davenport for property or interest in property of the said Earl Davenport, future support and alimony; and thereupon all the real estate owned by the said Earl Davenport shall be free and released from any and all liens heretofore held by the said Mayme Davenport.

"It is further ordered, adjudged and decreed by the court that said Mayme Davenport shall continue to be the owner of such real estate as she may have title thereto in her own name, without and free of all dower, homestead or other interest of any kind by the said Earl Davenport therein."

The real estate involved in the sale as reported in the income tax return is described as:

"North 10 acres of the East Half (E ½) of Northeast Quarter (NE ¼) of Section 30 bounded as follows:

"Beginning at the Northeast Corner of said Section 30, running thence South 20 rods; thence West

80 rods; thence North 20 rods; thence East along the North line of said Section 30 to the place of beginning; also the West Half (W ½) of Northeast Quarter of Section 30, subject to a burial ground; also Northwest Quarter (NW ¼) Section 30; also the Northeast Quarter (NE ¼) of Section 30 all in Township 17 North, Range 6 West of Third Principal Meridian, Sangamon County, Illinois. This will hereinafter be referred to as Tract 1."

In addition to this land Earl Davenport was the owner of the land located in Menard County, Illinois, which consisted of 90.85 acres hereinafter referred to as Tract 2.

After the execution of the property settlement contract and after the entry of the divorce decree, Mayme Davenport, divorced and unmarried by a series of four quit claim deeds, conveyed all this land to her former husband, Earl Davenport. Each of these deeds had therein a similar provision, which is in the words and figures following:

"The grantor expressly reserves and excepts herein all rights and liens contained in the decree and post-nuptial contract filed in the case of Mayme Davenport vs. Earl Davenport, Docket No. 91456, Chancery, entered in the Circuit Court of Sangamon County, Illinois, July 25, 1947."

Also at the time that the marriage relationship existed between Mayme Davenport and Earl Davenport, Mayme Davenport was the owner of the following described real estate, viz.:

"That part of the Northwest Quarter (NW ¼) of the Northeast Quarter (NE ¼) of Section 18, and all that part of the Southwest Quarter (SW ¼) of the Southeast Quarter (SE ¼) of Section 7, lying South of the Beardstown Road, all in Township 16 North, Range 6 West of Third Principal Meridian, Sangamon County, Illinois, hereinafter called Tract 3."

On the same day that Mayme Davenport executed her quit claim deeds to Earl Davenport he, as an unmarried divorced person executed a quit claim deed to Mayme Davenport covering Tract 3. All deeds were executed in accordance with the settlement contract and decree for divorce, and the purpose of executing these deeds was to clear title to all the real estate described as Tracts 1, 2 and 3.

It is pertinent here to point out that as between husband and wife, title to all real estate owned by either is subject to the inchoate right of dower of each and is also subject to the Homestead Exemption as provided by the Illinois Statutes; and that where a decree for divorce is entered in favor of one party as against all real estate of the offending party, inchoate right of dower continues to attach until it becomes consummated or is conveyed by deed. Hence the purpose of the five deeds above mentioned was to destroy the inchoate rights of dower and homestead of both parties in the lands of each other.

Inchoate Right of Dower is provided for in the Probate Act, Chapt. 3, I.R.S. Sections 11, 18, 19, 21, 22, 23 and 24, S.H.A. ch. 3, §§ 162, 170, 171, 173–176, which are as follows:

" § 11. The intestate real and personal estate of a resident decedent and the intestate real estate in this state of a non-resident decedent after all just claims against his estate are fully paid, descends and shall be distributed as follows:

"First, when there is a surviving spouse and also a descendant of the decedent: one-third of the personal estate and one-third of each parcel of real estate to the surviving spouse and the remaining two-thirds to the decedent's descendants per stirpes but, if the surviving spouse elects to take dower in any parcel of real estate as provided in Section 19, the one-third of the parcel vested at the decedent's death in the surviving spouse is thereupon divested and

such descendants thereupon become vested with the entire parcel subject to the dower of the surviving spouse.

\*　\*　\*　\*　\*　\*

"Third, when there is no descendant but a surviving spouse and also a parent, brother, sister or descendant of a brother or sister of the decedent: the entire personal estate and one-half of each parcel of real estate to the surviving spouse and one-half of each parcel of real estate to the parents, brothers, and sisters of the decedent in equal parts allowing to the surviving parent, if one is dead, a double portion and to the descendants of a deceased brother or sister per stirpes the portion which the deceased brother or sister would have taken if living, but, if the surviving spouse elects to take dower in any parcel of real estate as provided in Section 19, the one-half of the parcel vested at the decedent's death in the surviving spouse is thereupon divested and such other persons thereupon become vested with the entire parcel subject to the dower of the surviving spouse.

"Fourth, when there is a surviving spouse but no descendant, parent, brother, sister, or descendant of a brother or sister of the decedent: the entire estate to the surviving spouse, but, if the surviving spouse elects to take dower in any parcel of real estate as provided in Section 19, all of the parcel vested at the decedent's death in the surviving spouse is thereupon divested and the entire parcel, subject to the dower of the surviving spouse, thereupon becomes vested in the decedent's nearest kindred as provided in rule sixth or, if there is no known kindred, escheats as provided in rule seventh."

" § 18. A surviving spouse, whether husband or wife, may become endowed of a third part of all real estate of which the decedent was seized of an estate of inheritance at any time during the marriage by electing to take dower therein as provided in Section 19 unless the right to elect to take dower has been released or is barred. The right to elect to take dower shall not limit the interest vested in the surviving spouse under Section 11, 12, or 16 unless and until such right is exercised as provided in Section 19. Real estate contracted for by the deceased spouse in his lifetime, the title to which may be completed after his death, and equitable estates are subject to the right to elect to take dower. There is no estate of curtesy. As amended by act approved July 9, 1951. L.1951. p. 974."

" § 19. The surviving spouse of a decedent who dies after the effective date of this act may elect to take dower unless the right to elect to take dower has been released or is barred, by filing during his lifetime at the time and place provided for herein a written instrument describing the real estate, signed by the surviving spouse, and declaring his election to take dower therein.

"The time of filing the instrument shall be as follows: (a) within ten months after the death of the decedent if he dies intestate and letters of administration are not applied for within that period, (b) within ten months after the issuance of letters of administration if the decedent dies intestate and the letters are applied for within ten months after his death, (c) within ten months after the admission of the will of the decedent to probate, or (d) within such further time as may be allowed by the probate court if, within ten months after such issuance of letters or after the admission of the will to probate or before the expiration of any extended period, the surviving spouse files a verified petition therefor setting

forth that litigation is pending that affects the share of the surviving spouse in the estate.

"The place of filing the instrument shall be: (a) if the title to the real estate is not registered, in the office of the Recorder of Deeds of the county in which the real estate lies, or (b) if the title is registered in the office of the Registrar of Titles in the county in which the real estate lies, in which event the instrument shall be entered as a memorial on the last certificate of title to the real estate. The instrument filed in the office of the Recorder of Deeds affects only non-registered real estate described in the instrument and located in the county in which the instrument is filed. The instrument filed in the office of the Registrar of Titles affects only registered real estate described in the instrument and located in the county in which the instrument is filed. As amended by act approved July 9, 1951. L.1951, p. 974."

" § 21. A spouse who is divorced for the fault of the other spouse is not thereby barred of the right to elect to take dower in the real estate owned by the other spouse during the marriage, except where the marriage is void from the beginning; but a spouse who is divorced for his own fault is barred of the right to elect to take dower and other estate granted by the laws of this state in the real and personal estate of the other spouse. As amended by act approved July 9, 1951. L.1951, p. 974."

" § 22. Any conveyance of real estate or of all interest therein by a surviving spouse before the expiration of the period in which he may elect to take dower as provided in section 19 bars the right of the surviving spouse to elect to take dower in the real estate so conveyed. Added by act approved July 9, 1951. L.1951, p. 974."

" § 23. Except as otherwise provided by this Act, no judgment or decree confessed or recovered against one spouse and no laches, defaults, covin, forfeiture, or crime of one spouse and no deed or conveyance of one spouse prejudices the right of the other spouse to elect to take dower as provided in Section 19. As amended by act approved July 9, 1951. L.1951, p. 974."

" § 24. One spouse may release his right to elect to take dower in real estate of the other spouse by contract made before or after the marriage.

"One spouse releases his right to elect to take dower in real estate of the other spouse by joining with the other spouse in any written instrument relating to the sale, mortgage, conveyance, or other disposition of that real estate. When the interest of one spouse in real estate has been divested by any written instrument or by process of law, the other spouse by a written instrument signed by him, may release his right to elect to take dower therein to the grantee, mortgagee, purchaser, or those claiming under him.

"When a person sells and conveys real estate pursuant to the decree of a court or to a power contained in a will, he does not thereby release any right to elect to take dower in the real estate unless its release is specifically set forth in the deed of conveyance. As amended by act approved July 9, 1951. L.1951, p. 974."

" § 25. If real estate is conveyed or mortgaged by one spouse during his lifetime without release of the right to elect to take dower by the other spouse, the latter is barred of the right to elect to take dower therein as against the grantee or mortgagee or those claiming under them unless the surviving spouse elects to take dower therein in the manner and within the time provid-

ed in Section 19. As amended by act approved July 9, 1951. L.1951, p. 974."

The Homestead Exemption Law of Illinois is found in I.R.S. Chapt. 52, Sec. 1, S.H.A., and is as follows:

"Every householder having a family, shall be entitled to an estate of homestead, to the extent in value of $2,500, in the farm or lot of land and buildings thereon, owned or rightly possessed, by lease or otherwise, and occupied by him or her as a residence; and such homestead, and all right and title therein, shall be exempt from attachment, judgment, levy or execution, sale for the payment of his debts, or other purposes, and from the laws of conveyance, descent and devise, except as hereinafter provided. As amended by act approved July 11, 1957. L. 1957, p. 2686, H.B. No. 1271."

Section 2 of the Exemption Act provides as follows:

"Such exemption shall continue after the death of such householder, for the benefit of the husband or wife surviving, so long as he or she continues to occupy such homestead, and of the children until the youngest child becomes twenty-one years of age; and in case the husband or wife shall desert his or her family, the exemption shall continue in favor of the one occupying the premises as a residence."

Section 4 of the Exemption Act provides the method of extinguishing the Homestead in the following language:

"No release, waiver or conveyance of the estate so exempted, shall be valid, unless the same is in writing, subscribed by the householder and his or her wife or husband, if he or she has one, and acknowledged in the same manner as conveyances of real estate are required to be acknowledged, or possession is abandoned or given pursuant to the conveyance; * * * Provided that where a conveyance is made by a husband, who is such householder as grantor, to his wife, or by a wife who is such householder as grantor, to her husband, such conveyance shall be effectual to pass the title expressed therein to be conveyed thereby whether the grantor in such conveyance is joined therein by such wife or husband, as the case may be, or not. . * * * "

An examination of the contract, paragraphs 1, 2, 4 and 5, shows definitely that the purpose of the contract was to dispose of the property rights of each in the property of the other. The property rights of Mayme in the property of Earl could only be the right to inherit, the right of dower, and her homestead right, and the same would be true as to Earl in the property of Mayme. Paragraph 4 of the contract shows that Mayme was residing on and occupying the dwelling on the premises at the time the contract was executed. This definitely covered her right of homestead, and specifically provided that it should be preserved after the date of the contract, July 18, 1947, to and until March 1, 1948, free of any charge for use or rent, and by Paragraph 5 this right was terminated as of March 1, 1948.

To those acquainted with the real estate law of Illinois these property rights are substantial and a grantor husband, without the joining of a wife, cannot defeat these rights. In fact the law of Illinois protects these rights to such extent that if these rights are existing a grantor cannot convey a merchantable title because of this type of cloud.

In the case of McCord v. Massey, 155 Ill. 123, 125, 39 N.E. 592, 593, affirming 51 Ill.App. 186, the court said:

"Appellee, by his written agreement, covenanted with appellants that he would convey to them or their assigns by a good and sufficient warranty deed, conveying good title to the land in the agreement described. A compliance with that covenant would require appellee to convey to appellants or their assigns

a title free from incumbrances. Thompson v. Shoemaker, 68 Ill. 256; Morgan v. Smith, 11 Ill. 194; Brown v. Cannon, 5 Gilman 174; Carpenter v. Bailey, 17 Wend., N.Y., 244. A right of dower is an incumbrance, within the terms of that covenant, and it is immaterial whether the right of dower is inchoate or consummate."

In this case an incholate right of dower existed.

The rule as announced in this case is such a rule of property that cannot be done away with, except by voluntary conveyance.

An attempt was again made to have the Supreme Court of Illinois overrule this rule of property in the case of Pearson v. Adams, 1946, 394 Ill. 391, 68 N.E. 2d 777. The court there said, 394 Ill. at page 396, 68 N.E.2d at page 779,

"It is well settled that an inchoate right of dower is an incumbrance within the terms of a covenant to convey by good and sufficient warranty deed; Cowan v. Kane, 211 Ill. 572, 71 N.E. 1097, McCord v. Massey, 155 Ill. 123, 39 N.E. 592; that a court cannot compel a wife to release or convey her incholate right of dower in lands which her husband has contracted to sell but to which contract her husband is not a party. Bartak v. Isvolt, 261 Ill. 279, 103 N.E. 967; Cowan v. Kane, 211 Ill. 572, 71 N.E. 1097; Ebert v. Arends, 190 Ill. 221, 60 N.E. 211; and that where a vendor has covenanted to convey by warranty deed with his wife joining therein, but she was not a party to the contract and declines to sign the deed, a court of equity will require the vendor to convey by warranty deed all the interest he can release, leaving the purchaser the right to proceed against the vendor for damages for a breach of his covenants. Rost v. Kremin, 308 Ill. 79, 139 N.E. 111; Bartak v. Isvolt, 261 Ill. 279, 103 N.E. 967.

"It is impossible to reconcile the conflict of view between the various courts and text writers on the question presented by plaintiff. A full and detailed annotation covering both viewpoints is set forth in 46 A.L.R. 748, and supplemented in 148 A.L.R. 292. The courts of this State have consistently held that a court of equity could not, in a specific performance action such as this, fix a value on an inchoate dower and order an abatement of the purchase price to offset such value. In Humphrey v. Clement, 44 Ill. 299, the trial court decreed specific performance of a contract for the sale and conveyance of land upon payment of $880 by the purchaser, the amount due on the contract. The decree provided that if the wife of the vendor should refuse to join in the deed, then the purchaser might retain $250 out of the purchase money. The decree was reversed on the ground that it was based upon conjecture, that there was nothing by which it could be determined whether the wife would survive the husband. In recognition that the reversal of the decree would work an injustice on the purchaser, the court said the decree was wrong in principle. 'It is an instance in which a court of chancery, in an extreme anxiety to do equity, really does a wrong, for want of the means with which to act. Clement (the purchaser) certainly ought not to be compelled to take a title with a cloud upon it when he has bargained for a perfect one, and no court could compel him to take such title. But, on the other hand, when he comes into court and asks for a decree, the court should not attempt to go beyond its power. It can give him the husband's title, but it cannot compel the wife to release her dower, and it cannot decree compensation when there is no basis whatever for determining the amount'.

"In Cowan v. Kane, 211 Ill. 572, 71 N.E. 1097, 1098, in disposing of the same question, Justice Cartwright, speaking for the court said: 'But in ordering the specific performance of a contract for the sale of land which does not fix a sum as Liquidated damages for the failure of the wife to join in the deed, the chancellor has no power to provide for a deduction from the purchase money of any sum as the value of the inchoate right'. The Humphrey case was cited and relied upon and comment was made on Kauffman v. Peacock, 115 Ill. 212, 3 N.E. 749, where the nature of an inchoate right of dower was discussed and where it was held that the inchoate right is not property which can be measured and does not become property until the death of the husband. In reference to the suggestion made in the Cowan case, that the value of the inchoate dower would be computed on the basis of mortality tables, the court said: 'Such tables are used more from necessity than because they are reliable guide in fixing the probable duration of any individual life, being mere averages of many lives, but we know of no tables by which the value of an inchoate right of dower can be approximately estimated. If Cowan (the vendor) were dead and his wife surviving, mortality tables might be used as the best means of determining the value of her dower; but as they are both living, the chancellor would have to base his estimate on the supposition that she was to be the survivor, and, if that could be done in any case, there is no evidence whatever in this record upon which even a surmise could be founded. It would be carrying the use of mortality tables to an unwarranted extent to apply them in such a case to determine substantial rights.' * * * Plaintiff recognizes the line of decisions which stand against his contention and the reason that supports them, but he contends that this court should now assert a power which has since Humphrey v. Clement, 44 Ill. 299, been regarded as lacking and adopt the view that it can ascertain the value of an inchoate dower and abate the purchase price to offset it. * * * It is argued that this statute (Sec. 38, Probate Act) evidences a change in the public policy of this State and that to be in accord with such policy this court should overrule its holding in Humphrey v. Clement, and other cases. The public policy of a State is to be found embodied in its constitution, its statutes, and when these are silent on the subject, in the decisions of its courts. The statute relied upon singles out cases where there are involuntary sales and makes no reference to transactions voluntarily entered into by the parties. The argument that the former decisions of this court should be overruled by reason of the statute referred to is not persuasive.

"The prayer for indemnification against loss by reason of Coletta Adam's refusal to release her inchoate dower is on the same basis and subject to the same criticism as the part of the prayer which asked for a fixing of value of the inchoate dower and abatement of the purchase price in an amount equal thereto. There is no basis for fixing the damages that might be sustained. If Alva F. Adams survives his wife, there would be no damage. On the other hand, if she survives him, her dower interest is, under the statute, subject to so many dispositions by her that it would be impossible at this time to determine the damage for which plaintiff should be indemnified.

"We continue to adhere to the rule pertaining to a denial of abatement of the purchase price in cases of this

character as announced in Cowan v. Kane and other cases."

Thus under Illinois law an inchoate right of dower effectively bars a transfer of a title by warranty deed, and in the language of the courts the money value cannot be determined until after death of the claiming spouse. Here, in order to settle his rights in his property, plaintiff, Earl Davenport, was at the will of his wife, and although he was the erring party as disclosed by the decree for divorce, he had to pay literally through the nose to get his rights in his property settled.

The statute plainly places a value of $2,500 on the homestead estate of the wife. It is clear that unless the homestead estate was disposed of by the property settlement contract, a divorce decree would leave the homestead estate of the wife as a cloud upon the title to the extent of $2,500. See Voss v. Rezgis, 343 Ill. 451, 175 N.E. 799; Blaszynski v. Starczewski, 373 Ill. 140, 25 N.E.2d 884, and in case of divorce see Maher v. Goff, 316 Ill. 605, 147 N.E. 427 and Lynn v. Sentel, 183 Ill. 382, 55 N.E. 838, in case where wife does not execute deed, see Hotchkiss v. Brooks, 93 Ill. 386 and Bailey v. Hamilton, 337 Ill. 617, 169 N.E. 743. Thus again it is clear under Illinois law, the husband had to clear the homestead right in order to convey merchantable title.

In the case of inchoate dower the value was not determinable, and in the case of homestead the value was $2,500 under the law as it exists today, and at the time of the property rights contract the value was $1,000, the value having been increased by the General Assembly in 1957. Under these circumstances as herein related, the only way to settle the values was by contractual agreement between husband and wife, and the agreed amount as disclosed by the contract was $52,000.

Now, the District Director and the Commissioner disallowed this figure when they held that it was a lump sum alimony settlement. Thus arises the basis of the dispute between the parties and to settle this dispute, the court is required to look to the law of Illinois as to the legality of the contract made on July 18, 1947, as ratified and confirmed by the decree of the Circuit Court of Sangamon County, Illinois, on July 25, 1947. The pertinent provisions of the contract and the decree for divorce are quoted in full above, and will again be hereinafter referred to.

At the time of the contract, the husband, Earl Davenport, had no available cash to buy out the rights of the wife. He carried out the provisions of the contract by borrowing by way of first mortgage against his land, the sum of $52,000 from the Prudential Insurance Company of America. The check numbered 7059 dated August 7, 1947, certified, for this amount was made payable to Mayme Davenport by the Insurance Company, and recited that it was in full settlement of payments due from Earl Davenport, the borrower, under the divorce decree post nuptial agreement, and was endorsed by Mayme Davenport. There is no dispute that this money was paid to her.

The position of the defendant is that plaintiffs failed to meet the burden of proof in two particulars, viz.: (1) proving the amount they would be entitled to recover should the law in the matter be in their favor, and (2) whether the taxpayers have fulfilled their burden of proving that some portion of a payment of $52,000 from Earl to Mayme Davenport represented a payment for Mayme Davenport's inchoate dower interest. Under the law, the burden is on the taxpayer to meet the burden of proof in a tax refund suit. Decker v. Korth, 10 Cir., 219 F.2d 732; Lewis v. Reynolds, 284 U.S. 281, 52 S.Ct. 145, 76 L.Ed. 293; Cf. Fendrich, Inc. v. Commissioner, 7 Cir., 192 F.2d 916.

This brings the court to the evidence submitted, the property rights settle-

ment contract, the decree of the Sangamon County Circuit Court which granted the divorce; the various warranty and quit claim deeds made by Earl and Mayme Davenport, by Earl Davenport and Nellie Davenport to the Tolans, the mortgage made by Earl Davenport to the Prudential Life Insurance Company to secure the note for $60,000, the check of the Insurance Company to Mayme Davenport for $52,000, the stipulation of the parties hereto, and all evidence introduced on the hearing.

The final issue of fact is determined from the contract and the decree for divorce. The contract as above recited shows the following:

"(2) The defendant, Earl Davenport, will convey to Mayme Davenport all his right, title and interest by quit claim deed in and to all real estate owned by Mayme Davenport; and Mayme Davenport shall quit claim to Earl Davenport all her right, title and interest in the real estate owned by Earl Davenport subject to the provisions hereinafter set forth.

"(3) That Earl Davenport will pay to Mayme Davenport the sum of $52,000.00 in full settlement of all her right, title and interest in the real estate of Earl Davenport, and as settlement of her property rights, claim for alimony or support money and including her attorney's fees and court costs."

The pertinent provision of the divorce decree which governs the ultimate finding of fact herein is Paragraph 9, which is as follows:

"It is further ordered, adjudged and decreed that said settlement contract (of which a copy is hereto attached marked 'Exhibit A') is a proper and binding final settlement contract with regard to all matters of alimony and property settlement freely entered into between the parties; and said written contract is hereby approved by the Court; and

each and all of the allegations and provisions thereof are enforceable and binding on each of the parties thereto, their heirs, executors, administrators, legal representatives, and assigns."

An inspection of the contract shows that it is a contract not only for the settlement of property rights, but also for the surrender of the wife's right to support, relieving the husband of the wife's legal right to support. The first paragraph contains the following language: "in settlement of all property rights and interests * * * *and all questions of alimony, maintenance and support to be valid and binding upon the parties when and if a decree for divorce is entered.*" The second paragraph provides, "Whereas * * * Mayme Davenport * * * has heretofore filed a *complaint for divorce against* * * * Earl Davenport; whereas the parties * * * have negotiated for a settlement of their *marital disputes* and property rights, the settlement * * * to be valid and binding * * * in the event a *decree of divorce* is procured by * * * Mayme Davenport and whereas, the parties hereto * * * desire to agree and stipulate in writing their agreement for such settlement * * * (1) that * * * Mayme Davenport intends to file an amended complaint for divorce, (2) * * * (3) that * * * Earl Davenport will pay to * * * Mayme Davenport the sum of $52,000.00 in full settlement of all her right, title and interest in the real estate of defendant, and as settlement of her property rights, claim for alimony or support money and including her attorney's fees and court costs, (4) * * *, (5) * * *, (6) * * *, (7) * * *, (8) * * *, (9) It is covenanted and agreed that each and all payments of money * * * shall be considered as owing by Earl * * * to Mayme * * * from the time the *decree is entered* * * * (10) * * * it shall be *expressly provided in the final decree* * * * that there shall continue to be a valid * * * lien on all the real estate

* * * Earl Davenport now owns, * * * and (11) It is *understood and agreed* that *in case a decree is entered* in this cause * * * this contract and each and all the terms thereof shall be incorporated in such decree and may be considered a part of such decree." This contract in its effect is a contract which provides that Mayme Davenport procure a divorce and waive her right to alimony and support. In fact it provides by its very language that it is to be effective after a divorce is procured.

In the light of this contract viewed under the law of Illinois, it can only be upheld on the theory of a property rights settlement, and the portions concerning divorce and waiver of alimony and support money are null and void.

The law of Illinois on this question is well settled. A husband and wife can contract for a consideration to settle property rights and to live separate and apart, but they cannot contract to procure a divorce, nor can they contract to waive a wife's right to support because such is against public policy.

In Van Koten v. Van Koten, 323 Ill. 323, 325, 154 N.E. 146, 147, 50 A.L.R. 347, the Court said:

"The law in this state is well settled that a husband and wife may by a written post nuptial contract, based upon a valuable consideration, release to each other his or her rights in the other's property and estate, and thereby extinguish all rights, including the inchoate right of dower. (Kohler v. Kohler, 316 Ill. 33, 146 N.E. 476; Edwards v. Edwards, 267 Ill. 111, 107 N.E. 847.) Agreements between husband and wife for a separation are not per se illegal or invalid, but, where a husband and wife are living separate and apart, or where the circumstances are such that they can no longer congenially live together with mutual confidence and implicit faith in each other which the sanctity of the marriage relation demands, or where the relations between them are such as to render the separation necessary for the health or happiness of one or the other of them, an agreement between them, fairly and understandingly entered into, adjusting and settling their mutual rights in each other's property may be lawfully made, (Lyons v. Schanbacher, 316 Ill. 569, 147 N.E. 440), and a provision in such contract under such circumstances that the husband will pay to a wife certain sum each month for her support is not void as against public policy. French v. French, 302 Ill. 152, 134 N.E. 33.

"Marriage is a civil contract to which there are three parties—the husband, the wife, and the state—and it is regarded as a status based upon public necessity and controlled by law for the benefit of society at large. Leland v. Leland, 319 Ill. 426, 150 N.E. 270. One of the contractual obligations of the marriage contract is the duty of the husband to support the wife, and this contractual obligation cannot be abrogated without the consent of the third party, the state. Husband and wife may contract with each other as to their mutual property rights, but the husband cannot by contract, either before or after marriage, relieve himself of the obligation imposed upon him by law to support his wife, and a contract between husband and wife, one of the material provisions of which is that the husband shall be relieved of the obligation imposed upon him by law to support his wife, is illegal and void as being contrary to public policy. Lyons v. Schanbacher, supra.

"In the instant case one of the material provisions of the agreement was: 'the said party of the second part hereby releases all claims, rights, title, or interest to the

party of the first part from making any claim for support or maintenance, in any manner, from the party of the first part.' This provision was not only a material one, but as stated in the agreement it was one of the principal objects of the agreement. The agreement was therefore contrary to public policy and void, and this court cannot, therefore, place its sanction upon it and affirm a decree which finds it to be a valid and binding agreement."

In this case the court set aside the contract, but required the wife to refund the consideration price to the husband. Therefore without the reimbursement to the husband of the $52,000 paid by Earl to Mayme Davenport, the contract can only stand as a property rights settlement and the language providing for alimony and support disregarded, because the property rights settlement agreement was separate and distinct from the alimony and support provision. See also Pelc v. Kulentes, 257 Ill.App. 213, as to separate provisions one legal the other illegal of a separable contract.

Defendant cites the cases of Coleman v. Coleman, 341 Ill.App. 462, 94 N.E.2d 507, and Bailey v. Bailey, 157 Ill.App. 74, as holding to the contrary on the public policy of Illinois. In the Coleman case the court particularly points out that the property rights provision was definitely separate from the alimony provision in that considerations for each were definitely agreed upon in this that paragraphs 9 and 10 of the contract in question provided for the property rights settlement and that paragraphs 8 and 11 provided for alimony in the sum of $12,000. The court said, 341 Ill.App. at page 466, 94 N.E.2d at page 509:

"Reviewing the whole agreement and the decree entered by the court, it seems to us quite clear that the $12,000 ordered paid by the defendant under paragraph (g) of the decree was a payment of alimony and not a settlement of any property rights."

In the case of Bailey v. Bailey, 157 Ill.App. 74, at page 78, the court said:

"We are of the opinion that the court was warranted in annulling the agreement so far as the provision of the wife was concerned. Waiving the testimony of the wife that it was procured by threats, the evidence shows she was ignorant of her rights and considering the amount of property owned by him, the provision for her was inadequate and unfair."

This opinion upholds the public policy of Illinois, and is a case where it sustains the property rights settlement agreement and sets aside the alimony and support provision of the contract.

Again the defendant seeks to rely upon the provision of the Probate Act, Chap. 3, Sec. 189, for actuarial valuation of the inchoate right of dower. This contract as above set forth was executed July 18, 1947. The statute in force at this time is as follows:

Chap. 3, Section 189, § 38, I.R.S.1947, p. 46, S.H.A.:

"When real estate is sold on execution or in bankruptcy proceedings or proceedings for the foreclosure of a mortgage or for the enforcement of a mechanic's lien or vendor's lien, or for the payment of money, or in proceedings by a guardian or conservator under this Act, the owner of that real estate may commence a proceeding in a court of record of competent jurisdiction in the county where the real estate or some part thereof is situated, for the purpose of acquiring the outstanding inchoate right of dower in the real estate upon payment of the value thereof. * * * If the court determines that any defendant is entitled to inchoate dower in the real estate a decree shall be entered fixing the value thereof. In computing the value of the dower right, the expectancy of life of the spouse entitled to the dower right shall be de-

termined by recognized mortality tables, and the amount to be paid to the spouse shall be determined as if the owner of the estate which gave rise to such inchoate dower had died on the date of the filing of the proceeding to acquire dower and the spouse entitled to the dower therein had perfected his right thereto in the manner provided by Section 19 of this Act. * * * "

This is a permissive statute, and covers only the proceedings outlined therein (non inclusive is the right to determine dower according to mortality tables in a divorce proceedings) and in fact as above pointed out has no application here. Pearson v. Adams, 394 Ill. 391, 68 N.E.2d 777. This case as above pointed out in reference to determining the contractual right to dispose of a title defect, effectively disposes of the contention of the government that the value of inchoate right of dower should be disposed of by valuation in accordance with mortality tables.

Again the defendant bases its argument on Smith-Hurd I.A.S., Chap. 40, Sec. 19, when it is argued that this statute provides in part that a property settlement in lieu of alimony cannot be modified where the settlement was incorporated in a divorce decree. The pertinent part of the cited Statute is quoted, viz.:

"When a divorce shall be decreed, the court *may* make such order touching the alimony and maintenance of the wife * * *. The court may order the husband or wife * * * to pay to the other party such sum of money, or convey to the party such real or personal property, payable or to be conveyed either in gross or by installments as settlement in lieu of alimony, as the court deems equitable. Irrespective of whether the court has or has not in the decree made an order for the payment of alimony or support, it may at any time after the entry of a decree for divorce, upon obtaining

jurisdiction of the person of the defendant by service of summons or proper notice, make such order for alimony and maintenance of the spouse * * * as, from the evidence and nature of the case, shall be fit, reasonable and just, but no such order subsequent to the decree *may be made in any case in which the decree recites* that there has been an express waiver of alimony or a money or property settlement *in lieu of alimony* or where the court by its decree has denied alimony. * * * "

It is to be pointed out that this provision was added in 1949, and does not apply to a contract or decree dated on July 18, 1947. New York Life Ins. Co. v. Murphy, 388 Ill. 316, 324, 58 N.E.2d 182.

It is therefore not controlling here.

The latest expression from the Supreme Court of Illinois on the question of the validity of a contract of this kind is found in the case of Threw v. Threw, 410 Ill. 107, 101 N.E.2d 515, 518. Speaking of support and maintenance provision of a contract of the type herein involved, the Court said:

"Contracts of this character have consistently been condemned by this court and have been held to be invalid as against public policy. In the recent case of Lagow v. Snapp, 400 Ill. 414, 81 N.E.2d 144, most of the cases cited in the briefs of both parties have been reviewed and similar contracts held invalid. In that opinion Lyons v. Schambacher, 316 Ill. 569, 147 N.E. 440, and Van Koten v. Van Koten, 323 Ill. 323, 154 N.E. 146, 50 A.L.R. 347, were quite fully discussed, and Berge v. Berge, 366 Ill. 228, 8 N.E.2d 623, and Vock v. Vock, 365 Ill. 432, 6 N.E.2d 843, 109 A.L.R. 1170, cited in support. A further analysis of those cases would be repetition here. We are of the opinion that the contract in question in this case was aimed at relieving the husband from any further support, and maintenance and

492

was therefore contrary to public policy and void."

There is no question about a post nuptial contract providing, "for alimony and support money" on the date the contract in question was executed, as to its invalidity. The provisions of the contract providing for alimony and support money are null and void and must be disregarded as contrary to the public policy of Illinois.

■ The same is true concerning the provisions of the decree that approve the contract because the court in approving this contract had no jurisdiction to enter a decree contrary to the public policy of Illinois. It was bound to stay within the limits of its legal jurisdiction and the portions of the decree that approve the alimony and support provision of the contract are null and void. This is supported by authority of many courts for if this theory of the law would be refused, then the divorce would be invalid. It was within the jurisdiction of the Circuit Court of Sangamon County to enter a decree for divorce and to approve a contract settling property. These provisions of the decree were within the jurisdictional power of the court, and when not appealed from are final and binding and cannot be collaterally brought in question.

In Armstrong v. Obucino, 300 Ill. 140, 142, 133 N.E. 58, 59, the rule is announced as follows:

"The statement has very frequently been made that, where a court has jurisdiction of the parties and the subject-matter, its decree, however erroneous, can only be attacked on appeal or error; but the rule is subject to an exception equally well settled—that a decree may be void because the court has exceeded its jurisdiction. The bill prayed for the enforcement of the lien by a sale beyond and contrary to the powers given by the statute for enforcing mechanics' liens, and it does not follow that because the court had ac-quired jurisdiction of the parties and the subject-matter, it could make such a decree as was prayed for. Courts are limited in the extent and character of their judgments, and if they transcend their lawful powers their judgments and decrees are void, and may be collaterally impeached, wherever rights claimed under them are brought in question. The doctrine that where a court has once acquired jurisdiction it has a right to decide every question which arises in the cause and its judgment or decree, however erroneous, cannot be collaterally assailed, is only correct when the court proceeds according to the established modes governing the class to which the case belongs, and does not transcend in the extent and character of its judgment or decree the law or statute which is applicable to it. Windsor v. McVeigh, 93 U.S. 274, 23 L.Ed. 914; United States to Use of Wilson v. Walker, 109 U.S. 258, 3 S.Ct. 277, 27 L.Ed. 927; Rogers v. Dill, 6 Hill, (N.Y.), 415; Folger v. Columbian Ins. Co., 99 Mass. 267; Fithian v. Monks, 43 Mo. 502; Seamster v. Blackstock, 83 Va. 232, 233, 2 S.E. 36; Anthony v. Kasey, 83 Va. 338, 5 S.E. 176; Charles v. White, 214 Mo. 187, 112 S.W. 545, 21 L.R.A.,(N.S.), 481. Where a court, after acquiring jurisdiction, has assumed to enter a decree for a sale which goes beyond the limits of the jurisdiction and transgresses the law, the decree is void, and the sale based thereon is likewise an absolute nullity. 16 R.C.L. 7."

This rule has been followed in many cases, and is found in the textbooks and encyclopedias. See 33 C.J., Judgments, Sec. 37, p. 1076, and in 49 C.J.S. Judgments § 450, it is stated as follows:

"As to jurisdiction of the subject matter, it seems that, although the judgment may go beyond the issues and grant relief not asked for, or not within the *competence* of the

court, yet it may be good for as much as the court has power and authority to include in it."

See also Freeman on Judgments, 4th Ed., Sec. 117, 34 C.J., Judgments, Sec. 811, p. 509, 49 C.J.S. Judgments §§ 19c and 19d, 449, 30a Am.Jur., Judgments, Sec. 20, 21, 22, and 23, pp. 173, 175 and 176. These rules and principles of law have been succinctly and clearly stated in Armstrong v. Obucino, supra.

Accordingly that portion of the contract and that portion of the decree ratifying and approving the contract providing for alimony and support money are void, of no effect, and are a nullity.

■ With the omission of these portions of the contract, and these portions of the decree we have a good and valid property rights settlement, and a good divorce decree, both of which then provide for a property rights settlement at a cost of $52,000, and which settlement has been concluded by the execution of deeds by the various parties concerned.

This brings us next to the stipulations in open court that $5,000 of the above sum was in payment of attorneys' fees. The defendant, concerning this stipulation, after argument, moves to set aside this stipulation for the purpose of placing a failure of the burden of proof on plaintiff. The defendant had full opportunity of ascertaining the truth of the amount paid for attorneys' fees, and undoubtedly there was a disclosure of this amount to defendant, otherwise the stipulation would not have been agreed to in the first instance. Undoubtedly the plaintiff could actually prove this amount because it was within their knowledge.

Courts are interested in the truth of matters and encourage stipulations that develop truthful evidentiary matters. Accordingly the stipulation will not be set aside.

The plaintiffs will prepare the findings of fact and the judgment order; on the basis that the Commissioner should have allowed the amount of $47,000 as costs of acquisition of property.